IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CHRISTINA PAYLAN, M.D.,

      Plaintiff,

v.                             CASE NO. 1:15-cv-159-MW-GRJ

SCOTT TEITELBAUM, MD,
in his individual and official capacities,
UNIVERSITY OF FLORIDA, a state university,
and UF & SHANDS FLORIDA,
a state-operated entity,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Christina Paylan, M.D., proceeding *pro se*, filed suit against

Defendants Scott Teitelbaum, University of Florida, and UF & Shands

Florida Recovery Center, alleging violations of 42 U.S.C. § 1983 and state

law claims.  (ECF No. 1.)  Defendants have filed three motions to dismiss

Plaintiff's Complaint—one on behalf of Defendants Scott Teitelbaum and

UF & Shands Florida Recovery Center, ECF No. 6, one on behalf of

University of Florida, ECF No. 9, and one on behalf of all three Defendants,

ECF No. 16.  Plaintiff has filed a response to all motions to dismiss, ECF

Nos. 10, 15, & 18, and the motions are now ripe for consideration.  The

undersigned recommends that Defendants' motions to dismiss be granted in part and denied in part as explained below.

# I. BACKGROUND

In her Complaint, Plaintiff, a cosmetic surgeon in Hillsborough County, Florida, alleges that in October of 2010, she was engaged to be married to Mr. Joseph Abdo ("Abdo.")  Plaintiff claims that due to a family dispute in August 2010,  Abdo's family members began to disparage Plaintiff to the media, law enforcement, and licensing agencies.

Plaintiff claims that one family member, Michael Quill, instructed the family to make a false complaint with the Tampa Police Department that Plaintiff was drugging  Abdo, leading to Abdo's incompetence to manage his company.  Plaintiff says that based upon this complaint, Plaintiff and Abdo were arrested on June 9, 2011.  According to Plaintiff, this arrest precipitated an investigation by the Department of Health/Florida Board of Medicine, which required Plaintiff to visit Florida Recovery Center for an assessment regarding the allegations of drug abuse.

Plaintiff claims that on August 1, 2011, Plaintiff went to Florida Recovery Center to rule out drug addiction or substance abuse issues. She alleges that at Florida Recovery Center, she became involved in a

disagreement with Defendant Teitelbaum, one of the medical practitioners responsible for the drug assessment. Plaintiff claims that during this exchange, Defendant Teitelbaum referred to himself as "God" and told her that he had the power to take away Plaintiff's medical license.  Plaintiff told Defendant Teitelbaum that she would bring a lawsuit against him for his threats.

Plaintiff claims that Defendant Teitelbaum wrote false medical reports and used fabricated information to fill out official University forms under oath, solicited false medical reports, and falsely claimed that he owned a videotape which showed Plaintiff injecting a controlled substance, Demerol, into her veins.  Plaintiff claims that Defendant Teitelbaum initiated a confinement under the Marchman Act against Plaintiff by calling the University Police to transport her to a psychiatric unit at UF & Shands Hospital.

Plaintiff alleges that Defendant Teitelbaum was never able to diagnose her with drug addiction, but used "unorthodox explanations" and fabricated information to justify his use of the Marchman Act.  She states that on August 2, 2011, Defendant Teitelbaum sent a false medical report to the Florida Board of Medicine for the purpose of having Plaintiff's

medical license suspended.  She claims that the suspension was lifted eight months later after the Medical Board found that Plaintiff had no drug addiction or substance abuse problems.

Plaintiff alleges that UF & Shands Florida Recovery Center has a "practice and custom" of deficiently training employees, and its failure to properly train and supervise Defendant Teitelbaum led to her unlawful detainment.  She claims that the practice of UF & Shands Florida Recovery Center is to begin treatment without a diagnosis of a substance abuse problem, because if professionals are facing criminal charges or threats to their professional license, they will feel compelled to pay the Florida Recovery Center for treatment.  She states that she was charged thousands of dollars upon her arrival at Florida Recovery Center.

Plaintiff says that the University of Florida failed to conduct proper investigation into her treatment without a diagnosis of substance abuse and her confinement.

Plaintiff's claims include the following: fabrication of evidence by all Defendants; retaliation in violation of the First Amendment by Defendant Teitelbaum; false imprisonment by all Defendants; violation of her civil rights by UF & Shands and Florida Recovery Center by failing to instruct,

supervise, or control Defendant Teitelbaum; and unjust enrichment against all Defendants.  Plaintiff requests compensatory damages in the amount of two million dollars, a declaratory judgment against Defendants, injunctive relief precluding Defendants from treating individuals at Florida Recovery Center without a diagnosis, punitive damages in excess of thirty million dollars, reasonable attorneys' fees and costs under 42 U.S.C. § 1988, and any other relief that the Court deems just and proper.

## II.  STANDARD OF REVIEW

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir.1995).  If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of the claims, then the complaint is subject to dismissal.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action");

*Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1951-53 (2009) (*Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true," and, to escape dismissal, complaint must allege facts sufficient to move claims "across the line from conceivable to plausible.").

A *pro se* litigant's allegations are entitled to the benefit of liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, a court does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action."  *GJR Invs. v. Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (*overruled on other grounds* by *Iqbal).*

## III. DISCUSSION

Because Defendants Teitelbaum and UF & Shands Florida Recovery Center were served before Defendant University of Florida, the Defendants have filed separate motions to dismiss.  (ECF Nos. 6 & 9.)  Defendants also have filed a motion to dismiss for Plaintiff's failure to comply with an order of the Court.  (ECF No. 16.)  The Court will address each of the three motions to dismiss in turn.

**A.    Defendants' Motion to Enforce Fees and Costs and Stay this Action; Alternatively, Motion to Quash and Dismiss Plaintiff's Complaint and Strike Plaintiff's Claim for Attorney's Fees (ECF No. 6.)**

Defendants Scott Teitelbaum, M.D. and UF & Shands Recovery Center ("UF Recovery Center") request three forms of relief in their motion. First, Defendants request the Court to stay this action and enforce a fee and cost award from a prior case. Second, Defendants request the Court to quash service of process based upon improper service. Third, and last, Defendants request the Court to strike Plaintiff's claim for attorney's fees. Because the arguments may be addressed independently the Court will discuss each of Defendants' requests.

### 1.    Motion to Enforce Fees and Costs and Stay Action

Defendants Teitelbaum and UF Recovery Center request the Court to stay this action until Plaintiff pays fees and costs incurred by them in a prior state court action.

The background of the state court action can be summarized as follows. Plaintiff retained the Akerman Senterfitt law firm ("Akerman") to represent her with regard to the suspension of her medical license. After Plaintiff failed to pay Ackerman for their services, Akerman sued Plaintiff in

the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough

County, Florida seeking to recover attorney's fees and costs. Plaintiff,

proceeding *pro se,* in that action filed a "cross complaint" against Dr.

Teitelbaum, claiming that the reason she was required to retain counsel to

defend her medical license was Dr. Teitelbaum's fault because he

evaluated her and admitted her under the Marchman Act.

The cross complaint [which properly should have been designated as

a third party complaint under Fla. R. Civ. P. 1.180(a)] obviously had

nothing to do with Akerman's claim for unpaid fees and expenses.

Plaintiff's strained theory in the "cross complaint" against Dr. Teitelbaum

was that she was referred to Dr. Teitelbaum based on "false and

unsubstantiated charges" published in the Tampa Bay Times in June of

2011.  Plaintiff claimed that Dr. Teitelbaum adopted the false allegations

published in the newspaper and reported them to the Florida Medical

Board.  Plaintiff alleged there that this was a breach of Dr. Teitelbaum's

duty as a physician under Florida Statutes § 456 to investigate these

allegations and that Dr. Teitelbaum engaged in libel and slander by

adopting the allegations published in the Tampa Bay Times.  According to

Plaintiff, she could sue Teitlebaum in the Akerman collection action

because Dr. Teitelbaum's actions caused her to loose her medical license and therefore Teitelbaum was responsible for the Akerman attorney's fees and costs incurred in defending her medical license.

Recognizing that there was no good reason to sue him in the Akerman collection action, Dr. Teitelbaum filed a motion to transfer venue and to dismiss the "cross complaint.  Before the state court ruled on the motion Plaintiff voluntarily dismissed her cross complaint against Teitelbaum.

In Akerman's collection action against Plaintiff, Akerman ultimately obtained an award of $42,597.42 in attorney's fees as a result of Plaintiff's failure to accept Akerman's offer of settlement. Plaintiff has never satisfied this judgment.  Notably, however, Dr. Teitlebaum neither obtained a judgment nor did he obtain any award of fees or costs in the Hillsborough state court action.

Relying upon Rule 41 (d) of the Federal Rules of Civil Procedure Dr. Teitelbaum argues that he is entitled to recover the fees and costs he incurred in defending the Hillsborough County action before Plaintiff should be permitted to proceed with this case.

Rule 41(d) provides in relevant part that if a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court may order the plaintiff to pay all or part of the costs of that previous action and may stay the proceedings until the plaintiff has complied.  Fed. R. Civ. P. 41(d).  The decision to stay the case is completely discretionary with the district court.  *See, e.g.*, *Wishneski v. Old Republic Ins. Co*, No. 5:06-cv-148-Oc-10GRJ, 2006 WL 4764424 (M.D. Fla. Oct. 10, 2006)(recognizing that the imposition of costs is discretionary).

While there is no dispute that Plaintiff voluntarily dismissed her claim against Dr. Teitelbaum in the state court proceedings initiated by Akerman, Rule 41(d) requires more than just a second suit against the same defendant after a voluntary dismissal—the action must be "based on or including the same claim" as the first lawsuit.

Although Plaintiff's claims against Dr. Teitelbaum in the Akerman collection action and her claims in this case generally focus on the same event— Plaintiff's evaluation by Dr. Teitelbaum and subsequent commitment under the Marchman Act— Plaintiff's claims in the dismissed action and her claims in this case, are markedly different.

In the Akerman state court collection case, Plaintiff claimed that Dr. Teitelbaum breached his duties as a physician and defamed Plaintiff when he had Plaintiff committed in reliance upon false statements published in the Tampa Bay Times.  Plaintiff's claims in this case are much different. In this case Plaintiff  alleges that she and Dr. Teitelbaum got into an altercation during his evaluation.  As a result, Dr. Teitelbaum retaliated against her by fabricating evidence and committing her under the Marchman Act, so that he medical license would be revoked. Plaintiff's claims in this case are for violation of her civil rights—a claim not brought in the state court action—and for false imprisonment and unjust enrichment under state law, neither of which were brought in the dismissed state court action.

Accordingly, because the claims in each of the cases are different the Court concludes that the requirements of Rule 41(d) are not met and, therefore, the Court should decline to stay the action and decline to award costs.[1]

---

[1] There is a difference in views among courts as to whether an award of costs under Rule 41(d) may include attorney's fees as well as costs. *Compare, Hamlin v TD Bank,* 2014 WL 3101942, at *3 (W.D. N.C. July 7, 2014)("While some courts have concluded that "costs" under Rule 41(d) does not include attorney's fees, a majority of courts, including this one, have concluded that the rule implicitly authorizes am award pf attorneys' fees.) *with Caldwell v Wells Fargo Bank, N.A.,* 2014 WL 789083, at *6 (N.D.

### 2.    *Improper Service and Improperly Named Parties*

Next, Defendants request the Court to quash service of process

under Rule 12(b)(4) and (5).  Defendants argue that Plaintiff did not serve

the appropriate person with respect to service of process upon Dr.

Teitelbaum and UF Florida Recovery Center.  Additionally, Defendants

contend that UF & Shands Florida Recovery Center is a fictitious name

that cannot be served, and that the University of Florida is improperly

named.

With respect to the named Defendants University of Florida and UF &

Shands Florida Recovery Center, the proper juridical entity is the University

of Florida Board of Trustees.  *See* Fla. Stat. § 1001.72(1)("Each board of

trustees shall be a public body corporate . . . with all the powers of a body

corporate, including the power . . . to sue and be sued . . . ."); *see also Hui*

*v. University of Fla. Bd. of Trustees*, No. 1:14-cv-236-RS-GRJ, 2015 WL

1781578, at *2 (N.D. Fla. Apr. 20, 2015)(stating that the University Florida

Board of Trustees is the only University of Florida entity with the capacity to

be sued).

---

Cal. Feb. 26, 2014)("[u]nder the plain language of Rule 41(d), costs do not include
attorneys' fees.).

Plaintiff improperly has named the "University of Florida" as a Defendant rather than suing the University of Florida Board of Trustees.

The same defect applies to UF & Shands Florida Recovery Center. The Florida Recovery Center is part of UF Health, which includes the dentistry, medicine, nursing, and pharmacy colleges, various research institutes and centers, and two teaching hospitals and two specialty hospitals.[2]  As part of the University of Florida, the Florida Recovery Center is not a separate entity with the ability to sue and be sued.  Therefore, claims against the Florida Recovery Center must be brought against the University of Florida Board of Trustees, which is the juridical entity that may be sued when the claims, as here, relate to the University of Florida.

Accordingly, for these reasons, the improperly named Defendants "University of Florida" and "UF & Shands Florida Recovery Center" are due to be dismissed.  Plaintiff, however, should be given leave to amend her Complaint to name the proper juridical entity, the University of Florida Board of Trustees, and then perfect service of process in accordance with Fed. R. Civ. P. 4(j)(2).

With respect to Defendant Teitelbaum, Defendants argue that he was

---

[2] *See generally* https://ufhealth.org/about-us.

not properly served because he was served personally at 4001 S.W. 13th Street, Gainesville, Florida, 32608.  Defendants say that because Dr. Teitelbaum is an employee of the University of Florida Board of Trustees, proper service should have been made upon the University of Florida Board of Trustees.

Defendants are wrong. In her Complaint, Plaintiff states that she is suing Dr. Teitelbaum in both his individual and official capacity.  A suit against Dr. Teitelbaum in his official capacity, as an employee of the University of Florida, is a suit against the University of Florida and therefore the proper party to name (as discussed above) is the University of Florida Board of Trustees.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)("[A] suit against a state official in his or her official capacity is not a suit against the official but rather against the official's office . . . it is no different from a suit against the State itself.")(citations omitted).

Plaintiff's claims against Dr. Teitelbaum in his individual capacity, however, only require personal service on him. *See Reeves v. Wilbanks*, 542 F. App'x 742 (11th Cir. 2013)("Generally, a government employee sued in his individual capacity must be personally served.").  The return of service in this case reflects that personal service was accomplished on Dr.

Teitelbaum, personally, which comports with the requirements of Fed. R.

Civ. P. 4(e) that the plaintiff "deliver[] a copy of the summons and of the

complaint to the individual personally." The motion to dismiss for improper

service, then, is due to be denied with respect to service on Defendant

Teitelbaum.

### 3.   *Immunity*

Defendant Teitelbaum also argues that he is (1) statutorily immune

from suit, under Fla. Stat. §§ 456.076(2), (6), and 768.28(9)(a), (2)

absolutely immune from suit pursuant to common law, and (3) entitled to

fees and costs under Fla. Stat. §§ 456.076(6), 766.101(6) for having to

defend himself from Plaintiff's claims.

Turning first to section 768.28(9)(a), which addresses sovereign

immunity in tort actions, the relevant part provides:

> No officer, employee, or agent of the state or of any of its
> subdivisions shall be held personally liable in tort or named as
> a party defendant in any action for any injury or damage
> suffered as a result of any act, event, or omission of action in
> the scope of her or his employment or function, unless such
> officer, employee, or agent acted in bad faith or with malicious
> purpose or in a manner exhibiting wanton and willful disregard
> of human rights, safety, or property. . . The exclusive remedy
> for injury or damage suffered as a result of an act, event, or
> omission of an officer, employee, or agent of the state or any of
> its subdivisions or constitutional officers shall be by action

against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Defendant Teitelbaum contends that Plaintiff has failed to allege that he acted either outside the scope of his official duties or in bad faith or with malicious purpose.  Plaintiff, in response, argues that she has alleged in the Complaint that Teitelbaum pretended to have a videotape that he used to justify her commitment under the Marchman Act.  She argues that this is sufficient to show bad faith.

When ruling on a motion to dismiss, the Court is required to accept Plaintiff's factual allegations as true.  In the Complaint, Plaintiff alleges that due to an altercation between Dr. Teitelbaum and herself, Dr. Teitelbaum wrote false medical reports and used fabricated information and evidence to commit her under the Marchman Act.

Acting in "bad faith" or with "malicious purpose" occurs when an individual intentionally conducts a wrongful act without just cause or an excuse.  *See Kastritis v. City of Daytona Beach Shores*, 835 F. Supp. 2d 1200, 1225 (M.D. Fla. 2011)(citing *Parker v. State Bd. Of Regents ex rel.*

*Florida State Univ.*, 724 So.2d 163, 167 (Fla. 1st DCA 1998), that "bad

faith" under Fla. Stat. 768.28(9)(a) is conduct acted out with actual malice);

*Jarzynka v. St. Thomas University of Law*, 310 F. Supp. 2d 1256 (S.D.Fla.

2004)("malice . . . is best understood as wrongful act, done intentionally,

without just cause or excuse.").  Plaintiff's allegations—that Dr. Teitelbaum

fabricated evidence to have her committed under the Marchman Act after a

dispute—meet this standard.  Accordingly, at this point in the case, Dr.

Teitelbaum is not entitled to statutory immunity under Fla. Stat. §

768.28(9)(a).

Defendant Teitelbaum also contends that he is statutorily immune

from liability under the provisions of Fla. Stat. § 456.076(2) and (6), which

provides that "[a] consultant, licensee, or approved treatment provider who

makes a disclosure pursuant to this section is not subject to civil liability for

such disclosure or its consequences."[3]

Plaintiff's claims against Dr. Teitelbaum, however, do not center

around the content of the disclosure, but rather focus upon Dr.

Teitelbaum's conduct in preparing the disclosure.

---

[3] Defendants, in their motion, cite this provision as Fla. Stat. §§ 456.076(6); however, the quote cited in the motion comes from section 7 of the statute instead of section 6.

The Florida Supreme Court has held that government officials are entitled to statutory immunity when acting "within the orbit of [their] duties and responsibilities." *McNayr v. Kelly*, 184 So.2d 429 (Fla. 1966).  In *Goetz v. Noble*, 652 So.2d 1203 (Fla. Dist. Ct. App. 1995), which Defendants cite in their motion, a Florida District Court of Appeal relied on *McNayr* to find that a consultant for an impaired practitioner program was entitled to immunity from defamation claims for his statements to the hospital regarding potential treatment options.  The court there found that the consultant's comments were statements in connection with an official duty and so found that the official was entitled to absolute immunity.

Plaintiff's factual allegations against Dr. Teitelbaum—which the Court must assumed to be true at this stage— specifically allege that Dr. Teitelbaum took actions outside of the course of his official duties.  While statements contained within the disclosure to the impaired practitioner program are part of a consultant's official duties, arguably fabricating evidence and soliciting false medical reports—as Plaintiff claims that Dr. Teitelbaum has done—are not.  Therefore, based on the allegations in Plaintiff's Complaint, the Court concludes that Dr. Teitelbaum should not be entitled to absolute immunity at this point under Fla. Stat. § 456.076(2)

and (6).

Finally, Defendant Teitelbaum argues that even if his is not statutorily immune from suit, he is absolutely immune from suit for any claim that "merely restates or recasts the claim of defamation."  Defendant states that Plaintiff's claims that he made false medical reports and falsified official University documents are a restatement of defamation claims.

Defendant Teitelbaum relies on the court's decision in *Goetz* as precedent for absolute immunity for claims of defamation against an executive official.  However, the *Goetz* court found that the official was entitled to immunity because the claims were made in the course of the consultant's official duties.  Similarly, in *Stephens v. Geoghegan*, 702 So.2d 517, 525 (Fla. Dist. Ct. App. 1997)—which Defendant relies on for the proposition that "retooled" defamation claims against executive officials are also subject to immunity—the court found that the record "conclusively demonstrated that the officers' statements were made in the normal scope of their duties."

While Defendant argues that Plaintiff's claims against him, which include making false medical reports and falsifying official documents, occurred within the performance of his official duties, this argument is

misplaced.  Although reporting medical information to the impaired

practitioner program is within the normal scope of a consultant's duties,

falsifying records and medical reports are not.  Accordingly, based on the

allegations by Plaintiff against Defendant Teitelbaum in the Complaint, the

Court also concludes that at this time Defendant Teitelbaum is not entitled

to absolute immunity from suit.

Lastly, Defendant Teitelbaum also argues that under Fla. Stat. §§

456.076(6) and 766.101, he is entitled to attorneys' fees and costs for

defending himself in this action.  Section 766.101(6), however, provides

that "[i]n the event that the defendant prevails in an action brought by a

health care provider against any person that initiated, participated in, was a

witness in, or conducted any review as authorized by this section, the court

shall award reasonable attorney's fees and costs to the defendant."

Attorney's fees and costs are premature at this point because Defendant

Teitelbaum has not shown that he is entitled to absolute immunity.

### 4.      Failure to State a Claim

Lastly, Defendants move to dismiss Plaintiff's Complaint under Rule

12(b)(6) for failure to state a claim.  As Defendant Teitelbaum is currently

the only Defendant who has been properly named and served, the Court

will only address the claims raised against Defendant Teitelbaum.  Plaintiff

raises four claims against Defendant Teitelbaum: (1) fabricating evidence;

(2) first amendment retaliation; (3) false imprisonment; and (4) unjust

enrichment.

### a.      Fabricating Evidence

Much of Plaintiff's Complaint focuses on the alleged fabrication of

evidence by Dr. Teitelbaum.  Specifically, she claims that Dr. Teitelbaum

falsely claimed that he had a videotape showing Plaintiff injecting Demerol

into her veins, that he fabricated and solicited false medical reports of

substance abuse, and that he intentionally omitted facts from reports and

official University documents.  Defendant Teitelbaum says that Plaintiff has

failed to allege that she was "deprived of any right, privilege, or immunity

secured by the Constitution and laws of the United States" and has

therefore failed to state a claim under § 1983.

It is well established that fabricating incriminating evidence can

constitute a violation of constitutional rights.  *See, e.g.*, *Riley v. City of*

*Montgomery,* 104 F.3d 1247, 1253 (11th Cir. 1997)(planting evidence

could constitute a violation of constitutional rights and give rise to Section

1983 liability); *Halsey v. Pfeiffer*, 570 F.3d 273 (3rd Cir. 2014)(holding that

a state actor violates a defendant's due process rights by fabricating evidence to charge or convict the defendant); *Schneider v. Estelle*, 552 F.2d 593 (5th Cir. 1977)(a police officer's false affidavit violated a due process right to a fair trial, even though prosecutor was not aware of the fabricated evidence).  Involuntary commitment, such as a commitment under the Marchman Act, is a deprivation of liberty and as such is subject to the protections of due process.  *See O'Connor v. Donaldson*, 422 U.S. 563 (1975)(stating that involuntary commitment, such as commitment to a mental hospital, is a deprivation of liberty that requires the State to comply with due process of law).

Defendant argues that Plaintiff has failed to allege a deprivation of her constitutional rights, and as such, this claim is due to be dismissed. Courts are required, however, to hold pleadings of *pro se* litigants "to less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519 (1972).  Plaintiff has made clear that she is alleging that Defendant fabricated evidence in order to have her committed, in violation of her constitutional rights.  Liberally construed and taking her allegations as true, Plaintiff adequately has supported a claim for violation of her due process rights. This claim, therefore, should not be dismissed at

this point.

### b.    First Amendment Retaliation

Plaintiff claims that Defendant retaliated against her, in violation of the First Amendment, for expressing her concerns about instituting a treatment plan prior to any diagnosis of substance abuse.  Defendant argues that Plaintiff has failed to establish the elements of a first amendment retaliation claim—including failing to allege the protected speech, how Dr. Teitelbaum adversely affected her speech, and failing to allege any causal connection between her protected speech and Dr. Teitelbaum's adverse actions.

This Court fails to see how the First Amendment is implicated in the discussion between Plaintiff and Defendant Teitelbaum.  Not all speech is equally important under the First Amendment, and First Amendment protections are less rigorous for matters of private significance.  *Snyder v. Phelps*, 562 U.S. 443 (2011).  The First Amendment is not implicated when 'a public employee speaks not as a citizen upon matters of public concern, but instead as an employee on matters only of personal interest."  *Morris v. Crow*, 117 F.3d 449, 457 (11th Cir. 1997)(quoting *Connick v. Myers*, 461 U.S. 138, 147 (1983)); *see also Wilbourne v. Forsyth County School Dist.*,

306 F. App'x 473 (11th Cir. 2009)(teacher's motive in speaking was personal and the context of the speech was private, so she failed to state a First Amendment claim).

The altercation here, as described by Plaintiff, is a personal one between Plaintiff and Teitelbaum.  Plaintiff was upset and disagreed with Dr. Teitelbaum's decision to commit her under the Marchman Act without a prior diagnosis.  Dr. Teitelbaum then allegedly claimed that he was God and told Plaintiff that he could take away her medical license.  In the Court's view, even liberally construed, this speech involves nothing more than a personal dispute between the two parties and does not rise to the level of matters of public concern.  Accordingly, the Court concludes that the First Amendment is not implicated and, therefore, Plaintiff's claim for violation of the First Amendment fails to state a claim and should be dismissed.

### c.    False Imprisonment

Plaintiff's also claims that Dr. Teitelbaum falsely imprisoned her under the Marchman Act by using fabricated information.  Defendant says that because Plaintiff has failed to state any constitutional claim, the Court should decline to exercise supplemental jurisdiction over her state law

claims.  Alternatively, Defendant argues that Plaintiff has not stated a claim for false imprisonment because she has not shown that she was unlawfully detained.

As a threshold matter, the claim for false imprisonment and Plaintiff's next claim, for unjust enrichment, are claims under Florida state law.  The decision to exercise supplemental jurisdiction over pendant state claims is discretionary.  *Mergens v. Dreyfoos*, 166 F.3d 1114, 119 (11th Cir. 1999). Defendant's request for the Court to decline jurisdiction is based on the assumption that all of the federal claims should be dismissed.  However, in view of the fact that the Court concludes Plaintiff's due process claim is not subject to dismissal at this point, it makes sense for the Court to continue to exercise supplemental jurisdiction over Plaintiff's state law claims.  *See* 28 U.S.C. § 1367.

Turning to whether Plaintiff has alleged adequately a claim for false imprisonment, Defendant argues that Plaintiff has failed to show that she was unlawfully detained because her commitment under the Marchman Act does not require a diagnosis.

False imprisonment is "the unlawful restraint of a person against his or her will, and the gist of the action is the unlawful detention of the person

and the deprivation of his or her liberty."  *Spears v. Albertson's, Inc*., 848

So. 2d 1176, 1178 (Fla. Dist. Ct. App. 2003); *Johnson v. Weiner*, 19 So.2d

699 (Fla. 1944).  The detention must be without legal authority or "color of

authority" and must be unreasonable and unwarranted under the

circumstances.  *Montejo v. Martin Mem'l Med. Ctr., Inc.*, 935 So. 2d 1266,

1268 (Fla. Dist. Ct. App. 2006)(citing *Johnson*).

Simply because Plaintiff was detained under the Marchman Act,

which does not require a diagnosis, does not make her confinement

automatically "lawful."  If false statements or fabricated evidence are used

to detain an individual, the individual providing the false information may be

held liable for false imprisonment.  *See Harder v. Edwards*, 174 So.3d 524

(Fla. Dist. Ct. App. 2015)(discussing whether officers could be liable for

false imprisonment if false information was provided for a warrant); *Everett*

*v. Fla. Inst. of Tech.*, 503 So.2d 1382, 1383 (Fla. Dist. Ct. App. 1987)(claim

that a hospital involuntarily held plaintiff without complying with Baker Act

provisions adequately alleged the tort of false imprisonment).

Plaintiff has alleged that Dr. Teitelbaum used false information and

solicited false reports in order to justify her commitment under the

Marchman Act.  Assuming these allegations to be true, even if Plaintiff's

detainment was in compliance with the provisions of the Marchman Act, knowingly using false information as a basis upon which to detain her could support a claim for false imprisonment.  Accordingly, in light of the allegations presented, the Court concludes that Plaintiff has stated a claim for false imprisonment.

### d.    Unjust Enrichment

Finally, Plaintiff's remaining claim against Defendant Teitelbaum is that Dr. Teitelbaum—in connection with the Florida Recovery Center and the University of Florida— maintained a policy of beginning treatment for substance abuse and drug addiction without a prior diagnosis, and through this policy they "unjustly enriched" each other.

These allegations, even liberally construed, fail to allege a claim for unjust enrichment.  Unjust enrichment requires that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value.  *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329 (11th Cir. 2012)(quoting *Fla. Power Corp. v. City of Winter Park*, 887 So.2d 1237, 1241 n. 4 (Fla. 2004)).  Plaintiff's allegations fail to come close to meeting

this standard.  Plaintiff fails to allege or suggest that she conferred any

benefit on Defendants nor is there any suggestion in this case that the

Defendants voluntarily accepted and retained any benefit.  If Plaintiff

means to allege that the payment Defendants received for evaluating her

constitutes unjust enrichment, that is not what is involved in a claim for

unjust enrichment.   Accordingly, Plaintiff's claim for unjust enrichment

should be summarily dismissed for failing to state a claim.

In sum, Plaintiff's allegations, at this stage accepted as true, are

sufficient to state a claim for a due process constitutional violation and a

tort claim for false imprisonment.  Plaintiff's other claims, for violation of the

first amendment and for unjust enrichment, however, must be dismissed.

## B.   Improperly Named Defendant University of Florida's Motion to Dismiss Plaintiff's Complaint and Strike Plaintiff's Claim for Attorney's Fees and Punitive Damages. (ECF No. 9.)

Defendant University of Florida ("UF") has filed a separate motion to

dismiss raising many of the same arguments advanced by Defendants

Teitlebaum and UF Recovery Center.  Defendant raises the same

argument that the University of Florida Board of Trustees is the only

University of Florida entity with the capacity to be sued.  Defendant also

advances the same argument made by Defendants that Plaintiff has failed

to state a cause of action. The Court will not repeat its analysis of these issues since the arguments are the same. Accordingly, the Defendant's motion to dismiss the complaint because Plaintiff sued the University of Florida instead of the University of Florida Board of Trustees is due to be granted.

With regard to Defendant's request to strike Plaintiff's claim for attorney's fees and punitive damages claim, the request is due to be granted.

Plaintiff has included a claim for attorney's fees under 42 U.S.C. § 1988. Because Plaintiff is a *pro se* litigant she is not permitted to request attorney's fees under this statute. *See, Kay v. Ehrler,* 499 U.S. 432, 435 (1991).

As to punitive damages, Florida law provides that "[t]he state and its agencies and subdivisions" are not liable for punitive damages. Fla. Stat. § 768.28(5).  The University of Florida, administered by the Board of Trustees, is a state agency funded by the State of Florida and, therefore, cannot be subject to a claim for punitive damages.

Accordingly, Plaintiff's claims for attorney's fees and punitive damages are due to be dismissed. If Plaintiff files an amended complaint,

*pro se*, she should not include claims for attorney's fees or for punitive damages.

**C.    Defendants' Motion to Dismiss this Action for Plaintiff's Failure to Comply With this Court's Order (Doc. 5). (ECF No. 16.)**

Defendants request the Court to dismiss the complaint because Plaintiff failed to comply with the Court's August 10, 2015 order, directing Plaintiff to file a return of service by November 30, 2015. ECF No. 5. Defendants argue that Plaintiff failed to comply with this order because Plaintiff did not file the return of service until December 3, 2015 and in any event the service was not proper

Plaintiff represents that she filed the return late due to glitches in the NextGen CM/ECF program, which was implemented in late November. Plaintiff says that she was told by the clerk's office the reason for the problem was that she was the first *pro se* plaintiff to gain access to the Court's NextGen electronic filing system.

Rule 41(b) of the Federal Rules of Civil Procedure authorizes a district court to dismiss a complaint for failure to comply with a court order or the federal rules.  Fed. R. Civ. P. 41(b).  Dismissal is justified, however, only when there is a clear record of "willful" contempt and either an explicit

or implicit finding that lesser sanctions would not suffice.  *Gratton v. Great American Communications*, 178 F.3d 1373, 1374 (11th Cir. 1999)(citing *Goforth v. Owens*, 766 F.2d 1533 (11th Cir. 1985)).

Plaintiff's late filing cannot be described as "willful contempt," particularly in view of the fact that Plaintiff was prevented from timely filing the return of service because of the problems setting up a *pro se* filer in the Court's Next Gen Cm/ECF electronic filing database.

Defendants also argue that Plaintiff failed to comply with the Court's order because she did not perfect "proper" service.  As the Court discussed above, Plaintiff's service on Defendant Teitelbaum was in compliance with Rule 4 of the Federal Rules of Civil Procedure.  With regard to Florida Recovery Center and the University of Florida, these defendants were not properly named and thus service would not be effective. Plaintiff, however, will be given an opportunity to file an amended complaint naming the University of Florida Board of Trustees, and then may serve the University of Florida Board of Trustees in compliance with Rule 4(j)(2) of the Federal Rules of Civil Procedure.

Accordingly, Defendants' motion to dismiss Plaintiff's Complaint for failure to comply with the Court's August 5, 2015, order is due to be denied.

## IV.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

1.  Defendants' Motion to Enforce Fees and Costs and Stay this Action; Alternatively, Motion to Quash and Dismiss Plaintiff's Complaint and Strike Plaintiff's Claim for Attorney's Fees (ECF No. 6) should be **DENIED** as to Defendants' motion to enforce fees and costs and stay this action but should be **GRANTED** with respect to Defendants' motion to quash and dismiss Plaintiff's complaint. The University of Florida and UF & Shands Recovery Center should be dismissed as improperly named parties and Plaintiff's claims for first amendment retaliation and unjust enrichment should be dismissed. Plaintiff should granted leave to file an amended complaint within twenty (20) days of the Court's order granting the motion to dismiss.

2.  Improperly Named Defendant University of Florida's Motion to Dismiss Plaintiff's Complaint and Strike Plaintiff's Claim for Attorney's Fees and Punitive Damages (ECF No. 9) should be **GRANTED**

3.  Defendants' Motion to Dismiss this Action for Plaintiff's Failure to Comply With this Court's Order (Doc. 5), (ECF No. 16), should be **DENIED**.

 **IN CHAMBERS** this 16th day of February 2016.


*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic**

**docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**