IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CHRISTINA PAYLAN, M.D.,

     Plaintiff,

v.                                                  CASE NO. 1:15-cv-159-MW-GRJ

SCOTT TEITELBAUM, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

     This matter is before the Court on ECF No. 34, Dr. Teitelbaum and

UFBOT's Motion to Strike and Motion to Dismiss Plaintiff's Corrected

Amended Complaint. Plaintiff filed a response (ECF No. 39) and the

motion is otherwise ripe for review. For the reasons explained below, it is

recommended that Defendants' Motion to Strike and Motion to Dismiss be

granted in part and denied in part.

## I.  INTRODUCTION

     Plaintiff initiated this case by filing a *pro se* complaint under 42

U.S.C. § 1983 and under state law against Defendants Scott Teitelbaum,

the University of Florida, and UF & Shands Florida Recover Center. (ECF

No. 1.) Defendants filed three motions to dismiss in response to the

complaint. (ECF Nos. 6, 9, 16.) The Court dismissed the University of

Florida and UF & Shands Recovery Center as improperly named parties and dismissed Plaintiff's claims for First Amendment retaliation and unjust enrichment. (ECF No. 25.) The Court also struck Plaintiff's claims for attorney's fees and punitive damages against the University of Florida. (*Id.*)

On April 21, 2016, Plaintiff filed a corrected amended complaint ("Complaint"), naming Scott Teitelbaum, in his individual and official capacities, and the University of Florida Board of Trustees ("UFBOT") as Defendants. (ECF No. 31.)  UFBOT then filed a motion for summary judgment, ECF No. 33, which the Court denied. (ECF No. 59.) Additionally, Defendants filed this Motion to Strike and Motion to Dismiss, which is now pending before the Court. (ECF No. 34.)

## II. BACKGROUND

Plaintiff, a cosmetic surgeon in Hillsborough County, Florida, filed a Complaint focused on the following allegations regarding her visits to the Florida Recovery Center to assess potential drug abuse. On June 20, 2011, Plaintiff visited the Florida Recovery Center at the University of Florida Shands Hospital where she was informed that Dr. Teitelbaum had ordered her to a lock-down unit at Shands Psychiatric Hospital. Plaintiff left Shands Hospital, believing at first that this was a mistake rather than an

actual order from Dr. Teitelbaum.

The following day Plaintiff contacted Nancy Goodwin, Plaintiff's contact at the Florida Recovery Center and Dr. Teitelbaum's assistant. Plaintiff described to Ms. Goodwin the events that occurred the night before, and Ms. Goodwin allegedly informed Plaintiff that there was some kind of error. Ms. Goodwin then convinced Plaintiff to set up a second appointment at the Florida Recovery Center.

On August 2, 2011, Plaintiff returned to the Florida Recovery Center. Upon arrival for her second visit, Plaintiff was required to pay $3000 for diagnostic testing to rule out drug abuse.  Plaintiff alleges that she then was subjected to an unlawful search and seizure of her person and belongings. Plaintiff says she was told she was required to attend a group therapy session, and she objected. Plaintiff asked to speak to Dr. Teitelbaum, the doctor in charge of the Florida Recovery Center.  She alleges that after she spoke with Dr. Teitelbaum in a calm and methodical manner, a Marchman Act proceeding was wrongfully instituted against her.

According to Plaintiff, Dr. Teitelbaum claimed to be "God" and that he could do what he wanted, including taking away Plaintiff's medical license. Additionally, Plaintiff alleges that Dr. Teitelbaum wrote false medical reports and used fabricated information to justify the initiation of the

Marchman Act proceeding. Specifically, Plaintiff alleges that Dr. Teitelbaum fabricated the existence of a videotape showing Plaintiff injecting Demerol. After the initiation of the Marchman Act proceeding, Plaintiff was transported to the psychiatric unit at Shands Hospital, where she was kept for more than eight hours. According to Plaintiff, Dr. Teitelbaum initiated the Marchman Act against her to prove that he was in charge and had power in the situation.

Following this event, Plaintiff alleges that Dr. Teitelbaum published false information about her to the media, to the staff at the Florida Recovery Center, and to the Department of Health and other evaluators. Plaintiff says Dr. Teitelbaum's publication of false information about her created irreparable harm to her reputation in the medical community and labeled her as a drug addict.  Plaintiff says that as a result of these events, the Florida Board of Medicine suspended her medical license.

When Plaintiff returned to the Florida Recovery Center for a third visit in October of 2011 following a court order that required the Florida Recovery Center to first diagnose Plaintiff before any potential treatment, her experience was completely different. Plaintiff actually underwent multiple diagnostic tests. The tests revealed that Plaintiff did not have any

substance abuse disorder. Nevertheless, Plaintiff alleges that Dr. Teitelbaum continued to alter test results and staff evaluations to justify his position.

According to Plaintiff, UFBOT is liable as a result of its failure to sufficiently train its agents. She says this deficiency is a part of the official policy of the University of Florida.  According to Plaintiff, UFBOT's failure to instruct, train, and properly supervise Dr. Teitelbaum caused or substantially contributed to the harm to her. Plaintiff alleges that this practice continues to occur at the Florida Recovery Center.

As relief, Plaintiff requests $2,000,000 in compensatory damages, $30,000,000 for punitive damages, and a declaratory judgment finding that UFBOT conducts unlawful transactions and that Defendants acted in a way that constituted fraud upon Plaintiff. Plaintiff also requests injunctive relief prohibiting Defendants from treating individuals before diagnosing them at the Florida Recovery Center.

## III.  DISCUSSION

Defendants request that the Court strike and dismiss portions of Plaintiff's Complaint or the Complaint in its entirety. Specifically, Defendants request that the Court strike Plaintiff's demand for punitive damages as well as numerous factual allegations. Because the factual

allegations that Defendants argue should be stricken are incorporated

throughout the entire complaint, Defendants assert that the Court should

dismiss the Complaint in its entirety. Further, Defendants argue that the

Court should dismiss Counts I–III as to UFBOT, Count IV because of a

previous ruling by the Court, Count VI as time barred, and Count V

because of the Federal Rules of Civil Procedure. (ECF No. 34.)

## A. Motion to Strike[1]

### 1. Punitive Damages as to UFBOT[2]

UFBOT requests that the Court strike Plaintiff's claim for punitive

damages for the same reasons argued in previously filed motions that the

Court granted. (*See* ECF Nos. 6, 9, 16.) In the Court's dismissal of

Plaintiff's claim for punitive damages in her original complaint, the Court

---

[1] Under Rule 12(f) of the Federal Rules of Civil Procedure, "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In addition to requesting that the Court strike paragraphs containing redundant, immaterial, and impertinent material, Defendants also request that the Court strike certain claims for punitive damages. Courts, however, have differed on whether a motion to strike under Rule 12(f) is appropriate for challenging a prayer for relief. *See Parsons v. Okaloosa Cty. School Dist.*, No. 3:09cv254/WS/EMT, 2010 WL 1753152, at *2 (N.D. Fla. Mar. 30, 2010). Alternatively, a motion to dismiss under Rule 12(b)(6) may be the proper means in certain circumstances. *Id.*

[2] While a motion to dismiss may at times be the proper means to address a challenge regarding a prayer for relief, "proceeding pursuant to Rule 12(f) is proper here, however, because it does not challenge whether [Plaintiff's] allegations state a cause of action but rather only whether, if [Plaintiff] were successful on those allegations, she would be entitled to an award of punitive damages." *Parsons*, 2010 WL 1753152, at *2 n.2.

stated, "If Plaintiff files an amended complaint, *pro se*, she should not

include claims for attorney's fees or for punitive damages." (ECF No. 21 at

29–30.) The basis for the Court's dismissal was Florida Statute §

768.28(5), which provides that "[t]he state and its agencies and

subdivisions" are not liable for punitive damages. (ECF No. 21 at 29.)

Although Plaintiff originally asserted this claim against the University of

Florida, the reasoning applies to UFBOT as well. Further, Plaintiff does not

oppose striking her claim for punitive damages as to UFBOT. (ECF No. 34

at 5.) Accordingly, Plaintiff's claim for punitive damages against UFBOT is

due to be stricken.

### 2. Punitive Damages as to Dr. Teitelbaum for State Law Causes of Action[3]

Defendants request that the Court strike Plaintiff's claim for punitive

damages against Dr. Teitelbaum for Plaintiff's state law causes of action.

(ECF No. 34 at 5.)

---

[3] "[T]he proper procedural mechanism to attack the language or sufficiency of the allegations of a complaint may not be a motion to strike pursuant to Rule 12(f) but rather a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Parsons*, 2010 WL 1753152, at *2 n.2. Because Defendants' motion to strike Plaintiff's claims for punitive damages as to Dr. Teitelbaum center around whether Plaintiff's claim for punitive damages was sufficiently pled, construing Defendant's motion to strike as a motion to dismiss may be proper. Yet regardless of whether the Court rules on Defendants' motion as a motion to strike or a motion to dismiss, Defendants' motion should be denied based on the requirements for pleading punitive damages in Rule 8 of the Federal Rules of Civil Procedure.

Relying upon *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1341 (11th Cir. 2001) Defendants argue that Florida law requires a plaintiff to plead with specificity a claim for punitive damages.  Defendants further argue that conclusory allegations are insufficient to entitle a plaintiff to recover punitive damages, citing *Fields v. Mylan, Inc.*, 751 F. Supp. 2d 1257, 1260 (N.D. Fla. 2009), *T.W.M. v. American Medical Sys., Inc.*, 886 F. Supp. 842, 845 (N.D. Fla. 1995), and *Porter*. (ECF No. 34 at 5–6.) Because Plaintiff has failed to comply with Florida Statute § 768.72,[4] Defendants argue that Plaintiff's claim for punitive damages against Dr. Teitelbaum should be stricken as to her state law claims. (ECF No. 34 at 6.)

Defendants' argument ignores the Eleventh Circuit's decision in *Cohen v. Office Depot, Inc.,* 184 F.3d 1292, 1299 (11th Cir. 1999) *vacated in part*, 204 F.3d 1069 (11th Cir. 2000). In *Cohen* the Eleventh Circuit, found that Rule 8 of the Federal Rules of Civil Procedure trumps the heightened pleading requirements of Florida Statute § 768.72. The Court

---

[4] Under Florida Statute § 768.72(1), "no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." Additionally, "[a] defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence." Fla. Stat. § 768.72(2).

stated: "Our application of *Hanna* leads us to conclude that the pleading component of § 768.72 does not apply in this case due to its conflict with Rule 8(a)(3). For that reason, we hold that the pleading requirements of Florida Statutes § 768.72 are inapplicable in federal diversity cases. Thus, the heightened pleading requirements of § 768.72 do not apply in this case.  As the *Cohen* panel observed "a request for punitive damages is not a 'claim' within the meaning of 8(a)(2); it is only part of the relief prayed for in a claim." *Cohen*, 184 F.3d at 1297. Therefore, under Rule 8, "A pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3).

Defendants misread *Porter*.  In *Porter* the discussion of punitive damages was not in the context of a motion to dismiss or a motion to strike; instead, the court addressed the district court's order affirming the magistrate judge's order allowing the discovery of financial worth documents that would be used to support a claim for punitive damages. *Porter*, 241 F.3d at 1340. The court there focused on the discovery component of § 768.72, which provides that "[n]o discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted" and not, as here, on whether as a matter of pleading the

heightened pleading component of § 768.72 applies in federal court. *See id.*  Simply put, *Porter* has little to do with whether the heightened pleading requirement of § 768.72 applies in federal court. *Cohen* on the other hand does.  Accordingly, consistent with the ruling in *Cohen,* a federal court is not permitted to strike a claim for punitive damages because the pleader has failed to satisfy the heightened pleading requirement of § 768.72 .

Accordingly, because Plaintiff made a demand for punitive damages as required by Rule 8(a)(3),[5] Defendants' motion to strike Plaintiff's claims for punitive damages as to Dr. Teitelbaum for her state law causes of action is due to be denied.

### 3. Punitive Damages as to Dr. Teitelbaum for Federal Law Claims

Defendants argue that the Court should strike Plaintiff's claim for punitive damages for her federal law claims because Florida Statute § 768.72 is substantive and applies. (ECF No. 34 at 6.)  As explained in detail above, under *Cohen* Rule 8 of the Federal Rules of Civil Procedure preempts the requirements of § 768.72.  Accordingly, Defendants' motion to strike Plaintiff's claim for punitive damages as to Dr. Teitelbaum for her

---

[5] Notably, the fact that Plaintiff's request for punitive damages is sufficient to survive a motion to strike does not mean that Plaintiff is necessarily entitled to receive punitive damages nor does it mean that Plaintiff's claim for punitive damages will survive summary judgment.

federal law claims is due to be denied.

### 4. Irrelevant Factual Assertions

Defendants further request that the Court strike various allegations in Plaintiff's Complaint (¶¶ 11–20, 24, 44, and 46) because the allegations are redundant, immaterial, and impertinent. Defendants also request that the Court strike ¶¶ 72, 81, 83, 85, 95–96, 99–118, 129–130, 139, and all other similar paragraphs that are improper as immaterial, impertinent, or redundant.  Additionally, because ¶¶ 11–20, 24, 44, and 46 are incorporated by reference into all counts of Plaintiff's Complaint, Defendants request that the Court dismiss Plaintiff's Complaint in its entirety. (*Id.*)

Under Rule 12(f) of the Federal Rules of Civil Procedure, "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Court has broad discretion over granting or denying motions to strike. *United States v. Tepperberg*, No. 104CV418SPMAK, 2005 WL 2785633, at *1 (N.D. Fla. June 22, 2005) (citing *Royal Ins. Co. of Am. v. M/Y ANASTASIA*, 1997 WL 608722, at *3 (N.D. Fla. 1997)). Not only are such motions disfavored, but courts only grant them when the "challenged allegations have no possible relationship to the controversy, may confuse the issues, or otherwise

prejudice a party." *Tepperberg*, 2005 WL 2785633, at *1 (quoting *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995)). Unless the allegations are clearly immaterial or prejudicial to the moving party, a motion to strike will not be granted. *Sinclair v. Town of Yankeetown*, No. 1:07-CV-035-SPM, 2008 WL 660089, at *4 (citing *Berke v. Presstek, Inc.*, 188 F.R.D. 179, 180 (D.N.H. 1998)).

The listed paragraphs challenged by Defendants do not include allegations that are redundant, immaterial, impertinent, or scandalous. Rather than explaining why the challenged paragraphs are redundant, immaterial, impertinent, or scandalous Defendants only make the conclusory assertion that the information is "immaterial, impertinent, or redundant." (ECF No. 34 at 7–8.) Plaintiff, on the other hand, explains the relevance of these factual allegations to her claims and her reasons for including them in her Complaint. (ECF No. 39 at 4–7.)

Because the Court finds that there is a possible relationship between these factual allegations and Plaintiff's claims— and because there is no suggestion that inclusion of these  factual allegations would prejudice Defendants— Defendants motion to strike ¶¶ 11–20, 24, 44, 46, 72, 81, 83, 85, 95–96, 99–118, 129–130, 139 is due to be denied.

## B. Motion to Dismiss

For the purposes of the motion to dismiss, a district court may dismiss a complaint if the facts as pled do not state a claim for relief that is plausible on its face. *Sinaltrainal v Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Further, in *Ashcroft* the Supreme Court stated that *Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true," and, to escape dismissal, a complaint must allege facts sufficient to move claims "across the line from conceivable to plausible." 129 S. Ct. at 1951–53.

### 1. Counts I–III (1983 actions) as to UFBOT

Defendants argue that the Court should dismiss Counts I–III as to UFBOT because UFBOT cannot be liable for the acts of employees acting outside the scope of their employment. (ECF No. 34 at 10.) Relying upon

Florida Statute § 768.28(2), Defendants argue that UFBOT is only responsible for the acts or omissions of employees when the employees act "within the scope of the employee's office or employment." (*Id.*) Defendants reason that because Plaintiff alleged that Dr. Teitelbaum acted in "reckless disregard" and with "ill will and wanton[ness]," *see* ECF No. 31, Dr. Teitelbaum was not acting within the scope of his employment. (ECF No. 34 at 10.) Defendants say that UFBOT cannot be held liable for the acts of Dr. Teitelbaum, and therefore the Court should dismiss these counts as to UFBOT. (*Id.*)

While Defendants are correct generally, this argument is insufficient to warrant a dismissal of these claims against UFBOT at the pleading stage. Florida Statute § 768.28(9)(a) provides in relevant part:

> The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the court and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Plaintiff, on the other hand, specifically alleges that Dr. Teitelbaum was acting within the scope of his employment. (ECF No. 39 at 7–8.) Plaintiff is entitled to plead alternative grounds for relief. Because the liability of UFBOT turns on whether Dr. Teitelbaum was acting within the scope of his

employment, and because that determination cannot be made on the basis of a motion to dismiss, dismissing these counts as to Dr. Teitelbaum would be premature at this stage.

Defendants also argue that the Court should dismiss Counts I–III as to UFBOT because they are pled insufficiently. (ECF No. 34 at 10.) Specifically, Defendants argue that Plaintiff's allegations against UFBOT are based on assumptions that are unsupported by the facts pled, and therefore these claims should be dismissed. (*Id.* at 11.)  As discussed above, however, UFBOT may be liable for the acts of Dr. Teitelbaum if he was acting within the scope of his employment regardless of the specific allegations that Plaintiff made against UFBOT separately.  Accordingly, Defendants motion to dismiss Counts I–III as to UFBOT is due to be denied.

### 2. Count IV (Retaliation)

Defendants argue that the Court should dismiss Plaintiff's claim of retaliation because it is the same as Plaintiff's claim for First Amendment Retaliation in her initial complaint, which the Court previously dismissed. (ECF No. 34 at 11–12.) In dismissing this claim in her original complaint, the Court found that the First Amendment was not implicated because the speech involved nothing more than a personal dispute between Plaintiff

and Dr. Teitelbaum, and thus failed to rise to the level of matters of public concern. (ECF No. 21 at 23–24.)  Although Plaintiff's Complaint now alleges more details regarding the exchange between Plaintiff and Dr. Teitelbaum, the incident still constitutes a personal dispute. Accordingly, Defendants' motion to dismiss Count IV (Retaliation) is due to be granted for the same reasons the Court dismissed the same claim in Plaintiff's original complaint.

### 3. Count VI (Defamation)

Defendants argue that the Court should dismiss Plaintiff's defamation claim because it is barred by the two-year statute of limitations prescribed by Florida Statute § 95.11(4)(g). (ECF No. 34 at 12.) Defendants say that Plaintiff's claim is time barred by the applicable two year statute of limitations because Plaintiff alleges only single act of defamation, which occurred on August 2, 2011, more than two years before suit was filed. (*Id.* at 13.)

Defendants also argue that the Court should dismiss the claim under Rule 15(c) because Plaintiff's claim in the amended complaint is based on a letter written by Dr. Teitelbaum on August 2, 2011, which is different from her claim in the original complaint.

The Court , however, need not address Defendants Rule 15(c)

argument because Plaintiff's defamation claim is time barred.

Under Florida Statute § 95.11(4)(g), an action for libel or slander must be commenced within two years. "Florida courts have held that a cause of action for defamation accrues on publication of the allegedly defamatory material." *Dessasau v. Cook*, No. 99-14946, 00-12552, 2001 WL 34395880, at *3 (11th Cir. Mar. 15, 2001) (citing *Wagner, Nugent, Johnson, Roth, Romano, Erickson & Kupfer, P.A. v. Flanagan*, 629 So. 2d 113, 114–15 (Fla. 1993). Plaintiff alleges that Dr. Teitelbaum published false statements about her to multiple sources in 2011 following her visit to the Florida Recovery Center and published a libelous statement in a letter dated August 2, 2011. (ECF No. 31 at 32–34.) Notably, other than these allegations Plaintiff does not allege any other specific acts of defamation that occurred after 2011 and within two years of filing this case.[6]

---

[6] Plaintiff merely alleges generally that Dr. Teitelbaum published "false statements to the media, specifically to Tampa Bay Times newspaper, to staff at the Florida Recovery Center, to PRN staff, such as Bud Westmoreland, and to the Florida Board of Medicine and to the Department of Health." (ECF No. 31 at 32.) Plaintiff then states that these false representations led to the publication of a newspaper article in October of 2011. (*Id.*) Plaintiff's final visit to the Florida Recovery Center occurred in October 2011, and Plaintiff's Complaint includes nothing beyond that date other than Plaintiff's allegations that Dr. Teitelbaum attempted to justify his position—with no specific dates attached—and allegations regarding the reinstatement of her medical license eight months later. (*Id.* at 10–11.)

In Plaintiff's Response to Defendants' Motion to Strike and Motion to Dismiss, Plaintiff states that her defamation claim "does not arise out of a single publication, but instead out of multiple and continuous defamatory publications which began at different times and continued on to date." (ECF No. 39 at 11.) Yet this allegation about defamatory statements continuing to the date of her Response does not align with

Accordingly, Defendants motion to dismiss Plaintiff's defamation claim against Dr. Teitelbaum is due to be granted as time barred.

### 4. Count V (Fraud)

Defendants argue that the Court should dismiss Plaintiff's fraud claim for three reasons. First, Defendants argue that the fraud claim arises from a different set of facts from her original complaint, which is not in accord with Rule 15(c). (ECF No. 34 at 13–14.)

Defendants misunderstand Rule 15(c) . The Rule does not bar amendments that arise from a different set of facts. Instead, Rule 15(c) provides only that an amendment to a pleading only relates back to the date of the original pleading when it asserts a claim that "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).  Notably, Defendants do not argue that Plaintiff's fraud claim would be untimely unless it relates back to the time of her original complaint.

Additionally, Plaintiff's fraud claim does arise out of the same conduct and occurrence set out in her original complaint—specifically Plaintiff alleges that the statements regarding Plaintiff's diagnosis and treatment at the Florida Recovery Center were fraudulent.  Consequently, Rule 15(c)

---

Plaintiff's allegations in her Complaint.

does not provide a basis for dismissal of this claim.

Second, Defendants argue that the Court should dismiss Plaintiff's fraud claim because she failed to plead it with the specificity required by Rule 9(b). (ECF No. 34 at 14.)  Rule 9(b) provides in relevant part: "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To meet this standard a plaintiff "must allege the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064 (11th Cir. 2007) (quoting *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 568 (11th Cir. 1994)). Plaintiff's Complaint must contain more than conclusory allegations. *American United Life Ins. Co.*, 480 F.3d at 1064.

Plaintiff's fraud claim meets the heightened standards under Rule 9(b), including the details of the fraudulent acts, when they occurred, and who engaged in them. For example, Plaintiff's Complaint includes details of the statements made by Nancy Goodwin, Dr. Teitelbaum's assistant, surrounding Plaintiff's appointments at the Florida Recovery Center in 2011. (ECF No. 31 at 22–31.) Plaintiff alleges she was advised that there was state-of-the-art diagnostic testing tools and "come right over, we are

going to clear you and send you on your way." (*Id.*) Plaintiff also alleges that Ms. Goodwin provided instructions to Plaintiff regarding Plaintiff's arrival as well as informed Plaintiff that she would be able to return to her job after two to three days. (*Id.* at 23.)  Further, Plaintiff alleges that Ms. Goodwin told Plaintiff— after Plaintiff's first visit ended in her leaving— that a mistake had been made, and that Ms. Goodwin then set up another appointment with Plaintiff, and informed Plaintiff in more detail about their diagnostic testing and laboratories, which Plaintiff later learned was false. (*Id.* at 26–27.)  Accordingly, because these allegations meet the specificity requirements of Rule 9, Defendants' request to dismiss Plaintiff's fraud claim is due to be denied.

Third, Defendants argue that the Court should dismiss Plaintiff's fraud claim because Plaintiff has failed to state a cause of action for fraud. Under Florida Law, there are four elements to fraud: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (quoting *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)).

Despite Defendants' arguments to the contrary, Plaintiff has alleged

facts supporting each of the four elements. Plaintiff alleges there were multiple false statements regarding the Florida Recovery Center and what Plaintiff was told she could expect to happen upon her arrival and during her stay. Plaintiff then alleges that Ms. Goodwin knew that these statements were false. Plaintiff goes on to allege that the purpose of these false statements was to lure Plaintiff into returning to the Florida Recovery Center for treatment. Lastly, Plaintiff alleges that she suffered a variety of injuries, including the loss of her medical license licence and damage to her reputation and business, in reliance upon Ms. Goodwin's false statements, which Plaintiff says lured her to return to the Florida Recovery Center. (ECF Nos. 31 at 22–31, 39 at 14.)

Accordingly, Defendant's request to dismiss Plaintiff's state law fraud claim is due to be denied.  The events, alleged representations and circumstances concerning what led Plaintiff to return to the Recovery Center can be fleshed out during discovery and then on a full record presented to the Court so that the Court can determine whether fraudulent representations were made and if so whether the representations caused any injury to Plaintiff.

## IV.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Dr. Teitelbaum and UFBOT's Motion to Strike and Motion to Dismiss Plaintiff's Corrected Amended Complaint, ECF No. 34, should be **GRANTED** in part and **DENIED** in part as follows.

1. Plaintiff's demand for punitive damages as to UFBOT should be **STRICKEN**.

2. Defendants' motion to strike Plaintiff's demand for punitive damages against Dr. Teitelbaum for state and federal law causes of action should be **DENIED.**

3. Defendants' motion to strike various paragraphs of Plaintiff's complaint as redundant, immaterial, impertinent, or scandalous should be **DENIED.**

4. Defendants' motion to dismiss Counts I–III (1983 actions) as to UFBOT should be **DENIED.**

5. Plaintiff's claim in Count IV (Retaliation) should be **DISMISSED**.

6. Plaintiff's claim in Count VI (Defamation) should be **DISMISSED**.

7. Defendants' motion to dismiss Count V (Fraud) should be **DENIED.**

**IN CHAMBERS** this 22nd day of December 2016.


_s/Gary R. Jones_
GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only, and does not control.</u> A copy of objections**

shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.