```
                UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF FLORIDA
                    GAINESVILLE DIVISION
                        CASE NO.:  1:15-cv-159-MW-GRJ
CHRISTINA PAYLAN, M.D.,
            Plaintiff,
vs.
SCOTT TEITELBAUM, MD, in his
individual and official capacities,
UNIVERSITY OF FLORIDA BOARD OF
TRUSTEES, a state-operated entity,

            Defendants.
------------------------------------/
                    Advantage Court Reporters
                    305 Northeast First Street
                    Gainesville, Florida
                    Tuesday, May 23, 2017
                    1:30 p.m.



                         - - -


                  D E P O S I T I O N
                         OF
                  THOMAS FOWLKES, M.D.
            taken on behalf of the Plaintiff
         Pursuant to Notice of Taking Deposition



                REPORTED BY KAREN L. BIERY
```

1          MR. JOPLING:  Object to form.
2     A    That is what he reported as the date of
3 service, yes.  That's right.
4     Q    Okay.
5     A    So this is what information he would have
6 had at that time or at least a portion of that.
7 There may be other portions of the record.
8          But this says that you were referred to
9 them on 6/23.  A PRN chart was opened when you
10 called.  There was Demerol missing at the office
11 that you were arrested and charged with.  You were
12 asking about what the charges were.  You were
13 charged with trafficking in illegal drugs, 80 to
14 30 grams, possession of controlled substances,
15 possession of drugs without a prescription.
16          Mr. Westmoreland's letter indicated he had
17 spoken with the department of health investigator,
18 revealed that there was a video taken by the stepson
19 who's 28 years old.  The video allegedly showed
20 these items that are shown there.  So those reasons
21 that he knew at that time.
22          And arrested again -- that's where I came
23 up with the additional arrest.  Arrested again on
24 6/30 for trying to fill a prescription.
25          Evaluated by Dr. David Myers on 7/13.

1  Signed a release for us to speak with him, then
2  revoked the release.  He had gotten the evaluation
3  in between that time.  According to Dr. Myers'
4  evaluation, the Demerol was at home because you were
5  providing pain control for Mr. Abdo, so injecting
6  him with Demerol, also providing hydrocodone to your
7  stepson.
8          So the not completing that evaluation.
9  Then there is the description about not completing
10 the evaluation on the 21st and -- I believe 21st and
11 22nd when you arrived in the middle of the night and
12 then left, so did not complete the evaluation at
13 that time.  So you didn't complete Dr. Myers'
14 evaluation, didn't complete the next evaluation, and
15 then were back on 8/1 and were wanting to leave
16 against medical advice before that evaluation was
17 complete.
18          And so all of those reasons taken together
19 were certainly a good faith reason to have a reason
20 to believe that a substance abuse problem existed.
21     Q    Okay.  I am just -- I'm wondering, when
22 you act as an expert, Dr. Fowlkes, is it always just
23 the one side that you should rely on, the documents
24 provided by one side?
25          MR. JOPLING:  Object to form.

```
 1    Florida on any human being?
 2             MR. JOPLING:  Objection, asked and
 3        answered.
 4             You may tell her again.
 5        A    That is correct.
 6             MR. JOPLING:  Two minutes?
 7             DR. PAYLAN:  Yes, go ahead.
 8             (Four-minute break.  Mr. Jopling did not
 9        return.)
10        Q    So let's go back to this document.  So you
11   said that Dr. Teitelbaum had good faith basis to
12   institute the Marchman Act.
13        A    Right, to believe that you were impaired
14   by substances and that, because of that impairment,
15   you lacked sufficient judgment to be able to make a
16   decision for yourself and that he was justified in
17   implementing this involuntary process to determine
18   then whether the public would be safe and you would
19   be safe.  So he had plenty of reasonable grounds to
20   do that, yes.
21        Q    Okay, but I want to know, so by the time
22   of this 8/2/2011 I had already been in a secured
23   facility, as you call it, within kind of an
24   inpatient setting at their facility staying
25   overnight with them, correct?
```