No: 17-

# *In the United States Court of Appeals For the Eleventh Circuit*

**CHRISTINA PAYLAN, M.D., Petitioner/Appellant**

**-versus-**

**SCOTT TEITELBAUM, MD, in his individual and official capacities**
**UNIVERSITY OF FLORIDA BOARD OF TRUSTEES,**
**Respondents/Appellees**

_____

**INTERLOCUTORY APPEAL AND/OR PETITION FOR WRIT OF**
**MANDAMUS OR IN THE ALTERNATIVE**
**PETITION FOR WRIT OF PROHIBITION**
_____

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**Case No: 1:15-cv-159-MW-GAJ**

_____

CHRISTINA PAYLAN, M.D.
P.O. BOX 66442
St. Pete Beach, Florida 33736
Tel: (813) 919-6299
Email: drpaylan@bodytuck.com

Case No:_____
Paylan v. Teitelbaum et al.

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1-1 and Eleventh Circuit

Rule 28-1(b), plaintiff-appellant Christina Paylan, M.D. hereby states that the

following individuals and entities have an interest in the outcome of this case:

Bush, James

Bussing, Regina

Campbell, Kaycea, PhD- expert witness

Douglas, Dedo, MD- expert witness

Fowlkes, Thomas, MD- expert witness

Goodwin, Nancy

Greene, William

Hartman, Brent

Herkov, Michael

Hoffman, Richard, PhD- expert witness

Jones, Gray, Magistrate Judge

Jopling, John

Masten, Lawrence, PhD.

Mudri, John- expert witness

Case No:_____
Paylan v. Teitelbaum et al.

Paylan, Christina, Petitioner

Patient W.S.

Pruitt, Connie

Scott, Andrew- expert witness

Teitelbaum, Scott, Respondent

University of Florida Board of Trustees, Respondent/Defendant

Walker, Mark, Judge

White, Jamie

Date Checked: June 26, 2017

Checked by: Petitioner

_____
Christina Paylan, M.D.

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner requests oral argument based on two issues raised in this petition.

1. Denouncing *Ex parte Young* in dismissing state agency where Petitioner seeks an order from the district court refraining state official from violating rights under federal law,

2. 19-months and active litigation are factors supporting  unequivocal consent, making it improper to dismiss state agency under sovereign immunity.

Oral argument would help in delineating the importance of federal court jurisdiction to impose its powers to enjoin state officials when they engage in continuing federal law violations.

# **TABLE OF CONTENTS**

**Page:**

Certificate of Interested Persons and Corporate Disclosure Statement ..........2

Statement Regarding Oral Argument……………………………………3

Table of Contents……………………………………………………..5

Table of Citations……………………………………………………  6

Preliminary Statement……………………………………………….. 7

Jurisdictional Statement………………………………………………9

Statement of the Issues…………………………………………….…9

Statement of the Case…………………………………………………9

Argument …………………………………………………………..12

      I.      Standard of Review ………………………………………..12

      II.     Injunctive Relief Does Not Disappear just because State Agency is Dismissed as Party Defendant………………… 14

      III.    19-Months is Too Long to Wait Around to Assert Sovereign Immunity……………………………………………………17

Conclusion…………………………………………………………..20

Certificate of Compliance …………………………………………..21

Certificate of Service………………………………………………..22

# **TABLE OF CITATIONS**

Cases                                                                                                          Page

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,*
    506 U.S. 139, 144, (1993)……………………………………………………….13

*Cohen v. Beneficial Indus. Loan Corp.,*
    337 U.S. 541, 546, (1949)…………………………………………....…..13

*Ex parte Young*
    209 U.S. 123, (1908)………………………………………………………..

*Gillespie v. U.S. Steel Corp.,*
    379 U.S. 148, 152 (1964)……………………………………………...…12

*Johnson v. Jones*
    515 U.S. 304, 310, (1995)……………………………………….……13

*Mitchell v. Forsyth*
    472 U.S. 511 (1985)………...…………………………………………..12,13

*Papasan v. Allain,*
    478 U.S. 265, 266 (1986)……………………………………………..16

*Stroud v. McIntosh*,
    722 F.3d 1294 (11th Cir 2013)………………………………………..12

*Swint v. Chambers County Comm'n,*
    514 U.S. 35 (1995)…………………………………………………….....13

*Virginia Office for Protection and Advocacy v. Stewart*,
    563 U.S. 247 (2011)…………………………………………………......15

## PRELIMINARY STATEMENT

This lawsuit exposes the horrific abuses at a recovery rehabilitation center in Gainesville, Florida. The abuses are beyond the realm. The medical director, Respondent Scott Teitelbaum, M.D. is a "recovering" cocaine addict whose medical license was revoked by the State of Connecticut not just for his care and treatment of children while he snorted cocaine in his back office, but also for his pathological lies to dupe the medical board with false negative urine tests while he was under supervision. Over a ten year period, Respondent Teitelbaum changed states, moved to Florida from Connecticut,  and changed  jobs, but he did not change his stripes.

Over the past decade, as medical director, Respondent Teitelbaum, through his pathological lies, has been ruining careers and lives at the Florida Recovery Center by specifically targeting health professionals, and falsely diagnosing them with substance abuse disorders, and compelling them into costly treatments at this recovery center in Gainesville, Florida by holding their professional licenses over their head. No one fights because fighting is total destruction both financially and professionally. Petitioner is one of Respondent Teitelbaum's victims who decided to fight.

After 19 months of litigation with numerous dispositive motions on other grounds, the district court has granted the state agency, University of Florida

Board of Trustees, ("UFBOT"), sovereign immunity. The district court has also failed to recognize the *Ex parte Young* exception, precluding Petitioner from conducting discovery as to the ongoing violations of federal law.

This is an interlocutory appeal and is permissible under the collateral order doctrine. Two orders are appealed from, which do not require determination on the merits, permitting the review by this Court as an interlocutory appeal. The first ground relies on the *Ex Parte Young* exception which the district court has not recognized as being applicable, and the second ground is the grant of sovereign  immunity despite a 19-month delay, with intervening active participation by the state agency in discovery and filing of dispositive motions on other grounds, which Petitioner argues, is tantamount  to unequivocal consent by the state agency, UFBOT,  to be sued in federal court.

There is no stay requested. [1]Discovery cut off was May 31, 2017. Trial is set for September 27, 2017.

---

[1] It is Petitioner's hope that this petition can be processed through the appellate court in the next three months without the need to delay the trial set in this cause.

## JURISDICTIONAL STATEMENT

This Court's jurisdiction to issue a writ of prohibition to a district court is invoked under the All Writs Act, 28 U.S.C. § 1651, and under Rule 21 of the Federal Rules of Appellate Procedure.

Interlocutory appeals exist under § 1292(a)(1). Jurisdiction also exists under the collateral order doctrine.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in denying Petitioner discovery on her claims for injunctive relief seeking to refrain the state official, Respondent Teitelbaum from violating federal law, and

2. Whether the district court erred in finding sovereign immunity despite the 19-month delay in assertion of this affirmative defense after several dispositive motions being filed on other grounds and after active participation in discovery.

## STATEMENT OF THE CASE

1. On July 31, 2015, Plaintiff initiated this lawsuit against both Defendant Scott Teitelbaum, MD and UF Shands/Recovery Center. *A-1; Dkt 1.*  UF Shands/ Florida Recovery Center was later dismissed and University of Florida Board of Trustees was sued as a party defendant and as the legal entity for Shands Hospital and Florida Recovery Center. *A-2; Dkt 31.*

2.  The amended complaint outlined allegations of severe abuses at the Florida Recovery Center, imposed by its medical director, Respondent Teitelbaum. The allegations regarding the disciplinary history of Respondent Teitelbaum with respect to his cocaine addiction and findings of the State Board of Connecticut were corroborated by evidence submitted in Rule 26 disclosures uncontested by Respondent during his sworn testimony *A-3.*

3.  Defendant UFBOT filed its first motion to dismiss on November 13, 2015. *A-4; Dkt 6.*

4.  Defendant UFBOT filed its second motion to dismiss on December 22, 2015. *A-5; Dkt 16.*

5.  Then, Defendant UFBOT filed a motion to strike on December 23, 2015. *A-6; Dkt 17*

6.  Five months later on May 5, 2016, Defendant UFBOT filed its motion for summary judgment on the grounds that presuit notice had not been provided. *A-7; Dkt 33.*

7.  On the same day of May 5, 2016, Defendant UFBOT filed its second motion to strike. *A-8; Dkt 34.*

8.  All of these dispositive motions were denied by the district court.

9.  Then, on March 9, 2017, 19 months after participating in discovery and filing dispositive motions on other grounds, UFBOT filed its motion to

dismiss itself from the suit based on Eleventh Amendment Immunity. *A-9; Dkt 67.*

10. On March 28, 2017, Petitioner responded to UFBOT's motion to dismiss for lack of jurisdiction. *A-10; Dkt 70.*

11. On May 23, 2017, the Magistrate Judge issued his Report and Recommendation granting UFBOT's motion, recommending that UFBOT be dismissed from the lawsuit as a party defendant. *A-11; Dkt 92.*

12. On May 24, 2017, Petitioner filed her objections to the Report and Recommendation. *A-12; Dkt 93.*

13. On May 25, 2017, Judge Walker adopted the Report and Recommendation of Magistrate Judge Jones over Petitioner's objections. *A-13; Dkt 95.* [2]

14. On June 1, 2017, Respondent filed an emergency motion for protective order as to Dr. Regina Bussing, Chair of the Department of Psychiatry. Petitioner objected and on June 7, 2017, the Court granted Respondent's motion for protective order. *A-14; Dkt 107, 111, 112.*

15. On June 8, 2017, the district court denied Petitioner's request for reconsideration of the motion to reconsider for taking the deposition of Regina Bussing, MD, citing in part that deposition of Dr. Bussing would be relevant if UFBOT was still in the lawsuit. *A-15; Dkt 113, 114.*

---

[2] This is the first order from which an interlocutory appeal is timely taken.

16. On June 13, 2017, Petitioner filed a second motion for reconsideration based on new evidence from Connie Pruitt's deposition which showed involvement of Dr. Bussing regarding the change in policies having to do with partial hospitalization units. *A-16; Dkt 115.*

17. On June 16, 2017, the district court again denied Petitioner's motion, denying access to Plaintiff to take the deposition of Dr. Bussing. *A-17; Dkt 117.* [3]

18. Based on the district court's denial of discovery as to Petitioner's injunctive claims as to UFBOT through the suit against Defendant Teitelbaum in his official capacity, Petitioner now files this Petition, asserting that prohibition of discovery as to injunctive claims departs from established principles of law, and that two years was too long of a period for UFBOT not to assert its sovereign immunity to begin with.

## ARGUMENT

## I.    STANDARD OF REVIEW

"Whether a state waives its sovereign immunity from suit ……. are questions of law that the Court of Appeals reviews de novo." *Stroud v. McIntosh*, 722 F.3d 1294 (11th Cir 2013).

---

[3] This is the other order from which an interlocutory appeal is timely taken.

Interlocutory appeals are rare. However, as the Supreme Court has explained, "a decision [that is] 'final' within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case." *Mitchell v. Forsyth,* 472 U.S. at 524, (1985) (quoting *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 152, (1964)). A decision by a district court may be within " 'that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that the appellate consideration be deferred until the whole case is adjudicated.' " Id. at 524–25, 105 S.Ct. 2806 (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, (1949)).

It is under this "collateral order" doctrine that interlocutory appeals from denials of qualified immunity are allowed. Id. at 524–30, 105 S.Ct. 2806. Importantly, the "collateral order" doctrine is not an exception to the rule in 28 U.S.C. § 1291, but rather a practical construction of it. *Swint v. Chambers County Comm'n,* 514 U.S. 35 (1995).

The *Cohen* "collateral order" doctrine requires that the order being appealed " '[1] conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.' " *Johnson v. Jones*, 515 U.S. 304, 310, (1995) (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy,*

*Inc.*, 506 U.S. 139, 144, (1993)). "The denial of a defendant's motion for dismissal or summary judgment on the ground of qualified immunity easily meets [requirements one and two]." *Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806. The third criterion, post-trial review by the appeals court could not restore a defendant's immunity to the intangible burdens of litigation. *Id.* at 526–27, 105 S.Ct. 2806. In short, Mitchell held that it was not a defendant's immunity from liability, but rather a defendant's immunity from litigation that made a denial of qualified immunity effectively unreviewable on post-trial appeal. *Id.*

If an order on qualified immunity can be reviewed as an interlocutory appeal, it follows that an order on sovereign immunity can be reviewed as an interlocutory appeal. Similarly, it also follows that injunctive claims which survive despite the sovereign being dismissed also can be ripe for review as an interlocutory order because if this Court determines that Petitioner's position is correct, then duplicity of a trial will have been avoided.

## II.    INJUNCTIVE RELIEF DOES NOT DISAPPEAR JUST BECAUSE STATE AGENCY IS DISMISSED AS A PARTY DEFENDANT

It is well established that injunctive relief against state official does not disappear even though the State is removed as a party defendant. Injunctive relief is survived through suit in official capacity against the state official. Thus, the district court's conclusion that the only claims left against Defendant Teitelbaum are claims against him in his personal capacity is patently wrong. ***A-15, A-17***.

In her Amended Complaint, Petitioner seeks Injunctive Relief from Defendant Scott Teitelbaum, seeking an order to refrain him from violating federal law of patients who visit Florida Recovery Center. Federal law like unlawful search and seizure, federal law like subjecting to misdiagnosis for the purpose of compelling costly treatment involving in patient drug rehab where Respondent Teitelbaum incarcerates individuals in these in-patient stays, against their will, and in violation of their Fourteenth Amendment.

"Where the State itself or one of its agencies or departments is not named as defendant and where a state official is named instead, the Eleventh Amendment status of the suit is less straightforward. *Ex parte Young*, 209 U.S. 123,  (1908), held that a suit to enjoin as unconstitutional a state official's action was not barred by the Amendment. This holding was based on a determination that an unconstitutional state enactment is void and that any action by a state official that is purportedly authorized by that enactment cannot be taken in an official capacity since the state authorization for such action is a nullity. As the Court explained in *Young* itself:

> "If the act which the state Attorney General seeks to enforce be a violation of the Federal Constitution, the officer proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States."

15

*Id*., at 159–160.

"The *Ex parte Young* exception to a State's sovereign immunity rests on the premise that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes.". *Virginia Office for Protection and Advocacy v. Stewart,* 563 U.S. 247 (2011).

"Petitioners' equal protection claim is not barred by the Eleventh Amendment. The alleged ongoing constitutional violation—the State's unequal distribution of the benefits of school lands—is precisely the type of continuing violation for which a remedy may permissibly be fashioned under *Ex parte Young*, 209 U.S. 123, The essence of the equal protection claim is the present disparity in the distribution of the benefits of state-held assets and not the State's past actions." *Papasan v. Allain,* 478 U.S. 265, 266 (1986)

Here, Petitioner seeks an order from the district court to tell Respondent Teitelbaum to refrain from violating the rights of patients referred to Florida Recovery Center, from searching their belongings without consent, from making false diagnosis in order to compel costly treatment involving a minimum of 90-day stays at partial hospitalization units where Respondent Teitelbaum exercises authority of confinement and the likes of incarceration. The district court would not be interfering with the sovereign immunity of the State Agency, UFBOT, by

telling Respondent Teitelbaum to refrain from violating federal law. Petitioner has submitted proffer of Respondent Teitelbaum's continuing federal law violations by submitting an affidavit from Patient W.S. *A-18.* As proffer, Petitioner also provided 50+ online reviews from one person after another who had submitted their horrific experiences and their tortuous involuntary confinement at the Florida Recovery Center. *A-19.*

> Some of these reviews were riveting:

> "I cried for 3 months as my bank account was drained. I could have found a place where I learned and healed in those three months, rather than I felt in prison. The only thing I learned was that I will NEVER treat my patients the way Dr. Teitelbaum treated his. "

> "His smug, monotoned, degrading, sexist voice is only used to expound his ego and humiliate his patients. He forces patients to stay and pay more money by holding their professional licenses over their head and making up bullsh*t excuses for why they need to stay longer"

> "Do your homework as I was stuck in this bedbug infested hell hole for over 100 days after being promised I would be home by Christmas"

> "I had one RN tell me that while she did not suffer from PTSD after a tour of duty in Iraq, she did after a stay at Florida Recovery Center"

*A-19.*

The testimonials from these patients require at a minimum that Petitioner be allowed to proceed with her injunctive claims to refrain Defendant Teitelbaum from engaging in these violations, and in order to proceed with her claim, Petitioner needs to be allowed to conduct discovery in these areas.

Based on the *Ex Parte Young* exception, it is error not to permit Petitioner to conduct discovery into these areas regarding policies and procedures, which are obtainable from the deposition of Dr. Regina Bussing, which the district court has repeatedly prohibited Petitioner from taking.

Based on the foregoing, and under the umbrella of the collateral order doctrine, this Court should consider Petitioner's claims involving the Ex parte Young exception, and direct the district court to permit Petitioner to be able to take the deposition of Dr. Regina Bussing as well as any other persons who may have discoverable information regarding policies and procedures which violate the rights of patients visiting Florida Recovery Center under federal law.

## III.   19-MONTHS IS TOO LONG TO WAIT AROUND TO ASSERT SOVEREIGN IMMUNITY

It is undisputed that UFBOT did not assert its sovereign immunity until 19 months after the lawsuit was filed against it in federal court. During those 19 months, UFBOT filed dispositive motions, both motions to dismiss and motion for summary judgment on grounds other than sovereign immunity.  *A-4- A-8*. There was also no assertion of sovereign immunity in the discovery conducted by Defendant UFBOT. *A-20*. In fact, UFBOT  actively engaged in discovery asking interrogatory questions to Petitioner.  Reasonable minds could conclude that the 19 month delay in which there were at least four dispositive motions and active

participation in discovery was an unequivocal waiver of UFBOT's claim of sovereign immunity.

If 19 months, and bunch of dispositive motions and discovery requests are not enough, then what is? Is it permissible for UFBOT to engage a litigant for 19 months in litigation, not raise the Eleventh Amendment Immunity, and then reap the benefits of its sovereign immunity merely weeks before discovery cut off in an action? Is forever the time limit for a state agency to recognize that it should assert its Eleventh Amendment Immunity.

Additionally, UFBOT's motion to dismiss for lack of jurisdiction is improper as assertion of Eleventh Amendment Immunity is really assertion of an affirmative defense, not assertion that the district court does not have jurisdiction. The district court has jurisdiction over UFBOT, otherwise it would not be able to decide that UFBOT has not unequivocally consented to being sued. In order to decide whether consent is unequivocal or not, the district court had jurisdiction as it had jurisdiction through all the other dispositive motions filed before it.

19 months was too long. The State agency should not be condoned to engage in this type of litigation requiring Petitioner to hire more than 6 expert witnesses, and engage in extensive discovery until it decides it will now assert Eleventh Amendment Immunity. Some guidelines as to when this immunity must be asserted is required at least for judicial economy, if not for the extreme burden it

places on a litigant to respond to the state agency, until 19 months passes, and the state agency decides it will now pull its trump card.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that Appellant/Petitioner, CHRISTINA PAYLAN, M.D., that this Court grant this interlocutory appeal, petition for writ of mandamus and/or in the alternative petition for writ of prohibition, and grant any other and further relief as the Court may deem just and proper.

Respectfully Submitted,

*/s/ Christina Paylan, M.D.*

CHRISTINA PAYLAN, M.D.
P.O. BOX 66442
St. Pete Beach, Florida 33736
Office: 813-919-6299
Email: drpaylan@bodytuck.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This petition/interlocutory appeal complies with the 14,000 word limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,608 words, including the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 pt. Times New Roman font.

*<u>/s Christina Paylan,M.D.</u>*

CHRISTINA PAYLAN, MD

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Petition was filed with the Florida E-Portal  which will electronically serve all Counsel of Record at the designated email addresses. Additionally, I served the Petition on Counsel of Record at the physical address as follows:

A true and correct hard copy was also served by hand delivery to Chambers of District Court Judge Mark Walker and Magistrate Judge Gary Jones  at  on this date of 26 th of June , 2017.


_**/s/ Christina Paylan**_

CHRISTINA PAYLAN, MD