IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CHRISTINA PAYLAN, M.D.,

       Plaintiff,

v.                                                    Case No.  1:15-cv-159-MW-GRJ

SCOTT TEITELBAUM, M.D.,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Dr. Teitelbaum's

Memorandum in Support of His Bill of Costs and Motion for Court to

Determine Entitlement to Attorneys' Fees or Other Sanctions. ECF No.

192. Plaintiff ("Dr. Paylan") filed a response in opposition. ECF No. 199.

For the reasons discussed below, the Court finds that Defendant ("Dr.

Teitelbaum") is entitled to costs in the sum of **$9,937.83**, but he is not

entitled to attorneys' fees or other sanctions.

## I.  BACKGROUND

On July 31, 2015, Dr. Paylan brought suit against Dr. Teitelbaum, the

University of Florida, and UF & Shands Florida Recovery Center alleging

claims under 42 U.S.C. § 1983 and Florida law. ECF Nos. 1, 31. These

claims arose from Dr. Paylan's visit to the Florida Recovery Center in July and August 2011 for a substance abuse evaluation by Dr. Teitelbaum. Specifically, Dr. Paylan alleged Dr. Teitelbaum violated federal law by fabricating evidence, Marchman Acting her, and unlawfully searching and seizing her property. Dr. Paylan also alleged Dr. Teitelbaum violated Florida law by falsely imprisoning her and committing fraud. ECF No. 31.

During the course of the proceedings, Defendants filed multiple motions to dismiss. *See* ECF Nos. 6, 9, 16, 34, 67. As a result of these motions, the Court dismissed two Defendants, the University of Florida and UF & Shands Recovery Center, as impermissibly named parties, and one Defendant, UF Board of Trustees, based on Eleventh Amendment immunity. ECF Nos. 21, 25, 60, 61, 92, 95. The Court also dismissed Dr. Paylan's claims of retaliation and defamation. ECF Nos. 60, 61.

After the discovery period, Dr. Teitelbaum and Dr. Paylan each filed a motion for summary judgement on June 20, 2017. ECF Nos. 120, 122. Then on March 7, 2018, the Court granted Dr. Teitelbaum's motion for summary judgment and denied Dr. Paylan's motion for summary judgment. ECF No. 186. Judgment was entered in favor of Dr. Teitelbaum that same day. ECF No. 187.

As the prevailing party, Dr. Teitelbaum then filed his bill of costs and memorandum in support as well as a motion requesting the Court to determine his entitlement to attorneys' fees and other sanctions under Rule 54(d) of the Federal Rules of Civil Procedure. ECF No. 192. In response, Dr. Paylan objected to the amount of Dr. Teitelbaum's requested costs and argued that he is not entitled to fees and other sanctions. ECF. No. 199.

## II.  DISCUSSION

**A.    Dr. Teitelbaum is entitled to a reduced amount of taxable costs because not all of his requested costs are taxable under § 1920.**

Under Rule 54(d), a prevailing party can recover costs other than attorney's fees. Courts have "great latitude" in determining costs. *Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1526 (11th Cir. 1985). But courts are limited to tax costs as authorized by statute. *U.S. E.E.O.C v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000).

Under 28 U.S.C. § 1920,

[a] judge or clerk of any court of the United States may tax as costs the following: (1) [f]ees of the clerk and marshal; (2) [f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) [f]ees and disbursements for printing and witnesses; (4) [f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) [d]ocket fees under section 1923 of this title; [and] (6) [c]ompensation of court appointed experts, compensation of interpreters, and salaries,

fees, expenses, and costs of special interpretation services under section 1828 of this title.

Dr. Paylan objects to Dr. Teitelbaum's Bill of Costs, ECF No. 192-1, arguing that many of his requested costs are not recoverable under § 1920. According to Plaintiff, these unrecoverable costs include costs associated with the hiring of Dr. Teitelbaum's expert, preparing to depose Dr. Paylan's expert, videotaping depositions, deposition transcripts, service of process, and mediation. ECF No. 199 at 2–8. Each of Dr. Pyalan's objections to Dr. Teitelbaum's requested taxable costs is discussed below.

### 1. Service Costs for Deposition Subpoena

Dr. Teitelbaum requests $277.00 for the service of process of deposition subpoenas to Joseph E. Abdo, Joseph M. Abdo, Cindy Demetrovich, and Richard A. Hoffman. ECF No. 192-1 at 2. Dr. Paylan objects because Dr. Teitelbaum has failed to explain why these witnesses were necessary for Dr. Teitelbaum's case. ECF No. 199 at 8.

While 28 U.S.C. § 1920(1) explicitly "permits taxation of fees of the U.S. Marshal for process service," the Eleventh Circuit has held that "private process server fees may be taxed pursuant to §§1920(1) and 1921." *E.E.O.C.*, 213 F.3d at 624. But courts must limit this taxation of fees to fees that do not exceed the amount charged by the U.S. Marshal for the

same service. *See id.*; *see also James v. Wash Dept Holdings, Inc.*, 242 F.R.D. 645, 649 (S.D. Fla. 2007). At the time of service in this case, the U.S. Marshals Services charged "$65 per hour . . . for each item served by one U.S. Marshals service employee, agent, or contractor, plus travel costs and any other out-of-pocket expenses." 28 C.F.R. § 0.114(a)(3) (2013).

Dr. Teitelbaum states that his costs for service of subpoenas were $59.00, $59,00, $59.00, and $100.00. ECF No. 192-1 at 2. But the invoices he provided to support these costs do not reveal how much time was spent serving these subpoenas or how much was spent on travel. *Id.* at 10–13. The Court will, therefore, limit the taxable costs for service to $65 per item, which is the price charged by the U.S. Marshals service to serve one item in one hour. *See James*, 242 F.R.D. at 649 (similarly limiting the amount of taxable costs to the U.S. Marshal's cost for one hour of service).

Accordingly, Dr. Teitelbaum can recover the $59.00 requested for each of three subpoenas, but he can only recover $65.00 for the fourth subpoena (not the requested $100.00). Dr. Teitelbaum's taxable costs for service of process for deposition subpoenas is therefore limited to $242.00.

## 2. Deposition Transcript Fees

Dr. Teitelbaum requests $8,839.05 for the fees associated with depositions, including printed transcripts and the videotaping of some of the depositions. ECF No. 192-1 at 2–3. Dr. Paylan objects because Dr. Teitelbaum has failed to show the necessity of videotaping any depositions or the necessity of receiving copies of transcripts from any of the depositions. ECF No. 199 at 4–7.

Under § 1920, a court may tax as costs "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). "The question of whether the costs for a deposition are taxable depends on the factual question of whether the deposition was wholly or partially necessarily obtained for use in the case." *E.E.O.C.,* 213 F.3d at 620–21 (internal quotation marks omitted).[1] Also relevant to this case, a court "may tax costs 'associated with the depositions submitted by the parties in support of their summary judgment motions.'" *Id.* at 621 (quoting *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1474 (10th Cir. 1997)).

---

[1] Deposition costs are also taxable for the depositions of witnesses on the losing party's list. *E.E.O.C.*, 213 F.3d at 621.

"Because the parties presumably have equal knowledge of the basis for each deposition . . . the non-prevailing party bears the burden of showing that specific deposition costs or a court reporter's fee was not necessary for use in the case." *Monelus v. Tocodrian., Inc*, 609 F. Supp. 2d 1328, 1337 (S.D. Fla. 2009). The losing party must, therefore, show that the deposition was not "related to an issue which was present in the case at the time the deposition was taken" for the cost of the deposition not to be taxable. *E.E.O.C.,* 213 F.3d at 621 (quoting *Independence Tube Corp. v. Copperweld Corp.*, 543 F. Supp. 706, 718 (N.D. Ill. 1982)).

Moreover, "[a]ttendance fees of the court reporter . . . , processing and handling, and delivery fees are part of the court reporter's fee and are taxable." *Ferguson v. Bombardier Services Corp.*, 2007 WL 601921, at *4 (M.D. Fla. Feb. 21, 2007).[2] Costs of video depositions are also taxable if "a party notices a deposition to be recorded by nonstenographic means . . . and no objection is raised at the time . . . to the method of recordation." *Morrison v. Reichhold Chemicals, Inc.*, 97 F.3d 460, 465 (11th Cir. 1996).

---

[2] One court has noted that "[a]lthough some courts in this circuit allow for the recovery of delivery fees associated with transcripts, others have reached the contrary conclusion." *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1338 (S.D. Fla. 2009) (citations omitted). That same court also noted that "[a] conflict also exists in this Circuit regarding whether the copies of deposition transcripts are part of the court reporter's fee and, thus, taxable." *Id.*

But "fees for converting videos to digital, expedited or condensed transcripts, and copies . . . are not reimbursable under § 1920." *Ferguson*, 2007 WL 601921, at *4.  Similarly, "the costs for shipping, exhibit scanning, disk copies and mini-scripts are not taxable as costs." *Responsible Me, Inc. v. Evenflo Co.*, No. 06-61736-CIV, 2009 WL 528247, *8 (S.D. Fla. Mar. 2, 2009).

With regard to Dr. Paylan's deposition, Dr. Teitelbaum requests $855.00 for the videographer appearance fee and $2,314.50 for the court reporter appearance fees, transcript, and exhibits. ECF No. 192-1 at 2–3. Dr. Paylan challenges the taxation of the costs for videotaping her deposition because she believes the videotape was unnecessary since she would have been present at trial. ECF No. 199 at 4–5.

Dr. Paylan, however, has failed to meet her burden of showing that her deposition or the videotaping of her deposition was not necessary for use in this case. The fact that she would have been present at trial has nothing to do with the necessity of videotaping her deposition.[3] To the contrary, Dr. Paylan's deposition was arguably one of the most important

---

[3] Plaintiff does not argue that she did not receive notice that the deposition would be videotaped, which is important because notice is necessary to recover costs. *See Morrison v. Reichhold Chemicals, Inc.*, 97 F.3d 460, 465 (11th Cir. 1996)

depositions in this case, so it follows that Dr. Teitelbaum would have it
videotaped. Additionally, Dr. Teitelbaum filed Dr. Paylan's deposition
transcript in support of his motion for summary judgment. *See* ECF No.
119-2.

Because the Court finds that Dr. Paylan's deposition was not only
reasonably necessary in this case but crucial to the resolution of this case,
the Court finds that Dr. Teitelbaum is entitled to taxable costs of $855.00
for the videographer appearance fees, $480.00 for the court reporter
attendance fee, and $1,793.75 for the deposition transcript and exhibit.
ECF No. 192-1 at 16, 19. But Dr. Teitelbaum is not entitled to costs for the
e-transcript of her deposition ($25.00) or the scanned exhibits ($15.75), as
they are not taxable. Accordingly, Dr. Teitelbaum is entitled to $3,128.75 in
total taxable costs for Dr. Paylan's deposition, including the videotaping
and transcripts.

With regard to Dr. Teitelbaum's deposition, Dr. Teitelbaum requests
$639.00 for the costs of the transcript and exhibits of his deposition as well
as $100 for two DVD copies of the videotaped deposition. ECF no. 192-1
at 2–3. Dr. Paylan objects to costs for Dr. Teitelbaum's deposition because

she provided to Dr. Teitelbaum copies of transcripts from some of his previous depositions. ECF No. 199 at 5.

But again Dr. Paylan has failed to meet her burden of showing that the deposition was not necessary for use in this case. The fact that she provided copies of transcripts to depositions that were multiple years old and were taken for use in other cases is wholly irrelevant to whether the deposition taken for use in this case was necessary. Additionally, the necessity of this deposition is exemplified by the fact that Dr. Teitelbaum's deposition was filed in support of his motion for summary judgement. *See* ECF. No. 119-5.

Because the Court finds that Dr. Teitelbaum's deposition was necessary for use in this case, the Court finds that Dr. Teitelbaum is entitled to taxable costs for the deposition transcript and exhibits, but not his requested amount. *See* ECF No. 192-1 at 20. Because Dr. Teitelbaum requested reimbursement for the stenographic transcript of his deposition, the Court finds that DVD copies of the same deposition were not necessarily obtained for us in this case, so he cannot recover $100 for DVD copies of his deposition.[4] Additionally, Dr. Teitelbaum is not entitled to

---

[4] Here, Dr. Teitelbaum made no assertion as to the necessity of acquiring DVD

(continued...)

costs for the e-transcript of his deposition ($25.00) or the scanned exhibits ($68.25). Accordingly, Dr. Teitelbaum is entitled to $545.75 in total taxable costs for his deposition.

With regard to the depositions of Cindy Demetrovich and Dr. Joel Abraham, Dr. Teitelbaum requests taxable costs of $2,240.40 and $486.40, respectively. ECF No. 192-1 at 3. But as with Dr. Teitelbaum's deposition, Dr. Paylan objects to the deposition costs for these two individuals because Dr. Paylan made prior deposition testimony from them available to Dr. Teitelbaum and because there was no use for these deposition in this case as no new information resulted from these depositions. ECF No. 199 at 6–7.

Again Dr. Paylan has failed to meet her burden of showing that these depositions were not necessary for use in this case. The fact that she made available copies of a transcript to old depositions that were not taken in conjunction with this case is again wholly irrelevant to whether the

---

[4](...continued)
copies of his videotaped deposition. Additionally, in *Doe by and Through Jane Doe's Mother v. School Board of Broward Cty*, the judge found that "[b]ecause reimbursement is requested for the stenographic transcript of K.F., the undersigned finds that the DVD copy of K.F. was not necessarily obtained for use in the case and recovery should not be permitted." 2009 WL 10685194, at *3 (S.D. Fla. May 14, 2009).

depositions taken for use in this case were necessary.[5] Additionally, both of these depositions were used in support of the motions for summary judgment. *See* ECF No. 119-3; ECF No. 124-7.[6]

Because the Court finds that these depositions were reasonably necessary for use in this case, the Court finds that Dr. Teitelbaum is entitled to taxable costs for the deposition transcripts, exhibits, court report appearance fee, videographer, and equipment rental. *See* ECF No. 192-1 at 17–18. But Dr. Teitelbaum is not entitled to costs for the condensed transcript of the deposition ($20.00) or the scanned exhibits ($4.75) from Ms. Demetrovich's deposition. ECF No. 192-1 at 17.[7] Accordingly, Dr. Teitelbaum is entitled to $2,702.05 in total taxable costs for these two depositions.

---

[5] While Dr. Paylan submitted an affidavit regarding Ms. Demetrovich's previous deposition to show that the second deposition taken for this case was unnecessary, the affidavit reveals that the first deposition was five years old and from another case. ECF No. 199-3.

[6] Ms. Demetrovich's deposition testimony involves the Department of Health investigation into Dr. Paylan following her arrest, which provides background into the reasons Dr. Paylan went to the Florida Recovery Center for a substance abuse evaluation with Dr. Teitelbaum. Dr. Abraham signed the Marchman Act form, and the lawfulness of the Marchman Act was the central issue in the case.

[7] Dr. Paylan did not object to the fact that this deposition was videotaped.

With regard to the Connie Pruitt's deposition, Dr. Teitelbaum requests taxable costs in the amount of $499.75. ECF No. 192-1 at 3. Dr. Paylan challenges costs of Connie Pruitt's deposition because Ms. Pruitt works for Dr. Teitelbaum and because she was Dr. Paylan's witness. ECF No. 199 at 7.

But the fact that Ms. Pruitt was Dr. Paylan's witness does not preclude taxing the cost of her deposition transcript so long as her deposition was necessary for use in the case. Because Ms. Pruitt worked at the Florida Recovery Center and interacted with Dr. Paylan during the incidents in question, and because her deposition transcript was used in support of Dr. Paylan's motion for summary judgment, *see* ECF No. 124-17, the Court finds that Dr. Paylan failed to show that her deposition was not necessary for use in this case.  Therefore, Dr. Teitelbaum is entitled to taxable costs of $499.75 for Ms. Pruitt's deposition transcript.

Lastly, with regard to the deposition of Dr. Thomas Fowlkes, Dr. Teitelbaum's expert, Dr. Teitelbaum requests $1,704.00 in taxable costs. ECF No. 192-1 at 3. Dr. Paylan objects to all costs associated with the deposition of Dr. Fowlkes because he has never practiced medicine in

Florida and because Dr. Teitelbaum did not explain the utility or use of his deposition. ECF No. 199 at 7.

But the burden is on Dr. Paylan to show that the deposition was not necessary in order to preclude Dr. Teitelbaum from recovering costs, not on Dr. Teitelbaum to show that the deposition was necessary. Because Dr. Paylan has not shown that Dr. Fowlkes' deposition was unrelated to an issue in the case and because Dr. Teitelbaum used this deposition in support of his motion for summary judgment, *see* ECF No. 119-6,[8] Dr. Teitelbaum is entitled to $1,704.00 in taxable costs for this deposition.

Accordingly, Dr. Teitelbaum is entitled to recover a total of $8,580.30 for the costs associated with the transcripts for depositions of Dr. Paylan, Dr. Teitelbaum, Cindy Demetrovich, Dr. Joel Abraham, Dr. Thomas Fowlkes, and Ms. Connie Pruitt.

### 3. Expert Witness Fees

Dr. Teitelbaum requests a total of $9,362.65 in taxable costs associated with the expert witnesses in this case, Dr. Thomas Fowlkes and Dr. Richard Hoffman, including travel expenses, preparation of an expert

---

[8] Dr. Fowlkes provided testimony that was used by Dr. Teitelbaum to support the reasonableness and good faith basis for Dr. Teitelbaum's Marchman Act of Dr. Paylan, which again was a central issue in this case.

report, and deposition preparation. ECF No. 192-1 at 3–4. Dr. Paylan

objects to all of these costs as impermissible under § 1920. ECF No. 199

at 3–4.

The court may tax as costs "[f]ees and disbursements for printing and

witnesses." 28 U.S.C. § 1920(3). "The general rule in civil litigation in

federal courts is that expert witness fees are not taxable as costs beyond

the statutory per diem fee, mileage and the subsistence allowance

provided for under 28 U.S.C. § 1821." *D.B. v. Orange Cty., Fla.*, 2015 WL

847293, at *3 (M.D. Fla. Feb. 26, 2015) (quoting *Nat'l Bancard Corp. v.

Visa, U.S.A., Inc.*, 112 F.R.D. 62, 66 (S.D. Fla. 1986)).

With regard to a witness appearance fee, "[a] witness who appears

before a federal court 'or before any person authorized to take his

deposition pursuant to any rule or order of a court of the United States' is

entitled to fees and allowances, including 'an attendance fee of $40 per

day of each day's attendance.'" *Morrison*, 97 F.3d at 463 (quoting 28

U.S.C. § 1821(a)(1) & (b) (1994)).[9] In other words, "$40.00 is a maximum

amount per witness, including expert witnesses." *Peeler v. KVH Industries,*

---

[9] Additionally, "when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or statutory authority to the contrary." *Morrison*, 97 F.3d at 463 (quoting Crawford Fitting Co. J.T. Gibbons, Inc., 482 U.S. 437, 439 (1987)).

*Inc.*, 2014 WL 12617558, at *5 (M.D. Fla. June 16, 2014) (quoting *Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc.*, 697 F. Supp. 2d 1349, 1371 (S.D. Fla. 2010)).

Therefore, Dr. Teitelbaum is entitled to recover only $80.00 for Dr. Fowlkes' services, which is his expert witness appearance fee as prescribed by § 1821(b) for one day of attendance at his deposition and one day of travel to and from the deposition.[10] However, Dr. Teitelbaum is not entitled to recover the requested costs for Dr. Fowlkes' preparation of the expert report ($4,000.00) or for preparation for the deposition ($3,750.00).

In addition to a witness appearance fee, "[a] witness is also entitled to the actual expense of travel by common carrier at the most economical rate reasonably available." *Ferguson*, 2007 WL 601921, at *5 (citing 28 U.S.C. § 1821(c)(1)). "[A] witness is [also] entitled to a subsistence allowance in an amount not to exceed the per diem allowance for federal employees when the witness is required to stay overnight." *Id.* But to recover "[a] witness's travel costs . . . the party requesting travel costs

---

[10] "A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance." 28 U.S.C. § 1821(b).

needs to provide detailed documentation of the expenses incurred." *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 5446412, at *5 (S.D. Fla. Sept. 28, 2013).

For Dr. Fowlkes' travel expenses, Dr. Teitelbaum requests $62.43 in mileage for travel between his home and the Memphis airport (at a rate of $0.445/mile), $871.10 for airfare (for round trip travel from Memphis, TN to Gainesville, FL), and $179.12 for one night at a hotel. ECF No. 192-1 at 3–4. Because the rates seem reasonable for mileage and airfare (and because Dr. Paylan has failed to argue otherwise), Dr. Teitelbaum is entitled to those requested costs.

But, with regard to his lodging expenses, in 2017—the year in which Dr. Fowlkes traveled—the per diem rate for Gainesville, Florida (where Dr. Fowlkes' deposition took place) was $102 for lodging.[11] Dr. Teitelbaum is, therefore, only entitled to recover $102.00, rather than $179.12, for the hotel accommodations for Dr. Fowlkes.

Dr. Teitelbaum also requests $500 in fees associated with the deposition of Dr. Hoffman, Plaintiff's expert. ECF No. 192-1 at 4. Because

---

[11] For the per diem rates for lodging in Gainesville, Florida for 2017, *see* https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-rates-lookup/?action=per diems_report&state=FL&fiscal_year=2017&zip=&city=Gainesville.

28 U.S.C. § 1821(b) limits fees for non-court-appointed experts to an appearance fee of $40 per day, Dr. Teitelbaum is not entitled to recover any fees for related to Dr. Hoffman's deposition because his deposition was cancelled. ECF No. 192-1 at 31; *see also Ferguson*, 2007 WL 601921, at *5 (noting that a prevailing party cannot recover witness fees for an expert who never testified at trial and was not scheduled to testify at trial).

Accordingly, Dr. Teitelbaum is entitled to a total of $1,115.53 in taxable costs for the expert witness appearance fees and travel expenses for his expert, Dr. Fowlkes.

### 4. Mediation Costs

Lastly, Dr. Teitelbaum requests $625.25 in taxable costs for costs associated with mediation. ECF No. 192-1 at 4. Dr. Paylan objects to Dr. Teitelbaum's request for mediation expenses because mediation costs are not enumerated in  28 U.S.C. § 1920. ECF No. 199 at 8.

A prevailing party is "not entitled to mediation fees because those costs are not taxable under 28 U.S.C. § 1920." *Nicholas v. Allianceone Receivables Mgmt., Inc.*, 450 F. App'x 887, 888 (11th Cir. 2012) ("We agree with the district court's ruling and find persuasive our decision in *Gary Brown & Assoc., Inc. v. Ashdon, Inc.*, 268 F. App'x 837, 845–46 (11th Cir.

18

2008), denying a prevailing party's request for mediation expenses.").

Because mediation costs are not taxable under § 1920, Dr. Teitelbaum

cannot recover $625.25 for mediation costs.

Accordingly, Dr. Teitelbaum is entitled to recover a total of $9,937.83

in taxable costs.

## B.    Dr. Teitelbaum is not entitled to attorneys' fees.

Dr. Teitelbaum also argues that he is entitled to attorneys' fees

because this case was "frivolous, unreasonable, and without foundation."

More specifically, Dr. Teitelbaum argues that Plaintiff could not state a

*prima facie* case for a violation of her rights under 42 U.S.C. § 1983 or

Florida law. Additionally, Dr. Teitelbaum says that he did not serve any

settlement offers outside the Court-ordered mediation. Accordingly, Dr.

Teitelbaum asserts that he "is entitled to his attorneys' fees for litigating this

frivolous action." ECF No. 192 at 3–5.

"[A] district court may in its discretion award attorneys' fees to a

prevailing defendant in a . . . section 1983 action upon a finding that the

plaintiff's lawsuit was 'frivolous, unreasonable, or without foundation.'"

*Sullivan v. Sch. Bd. of Pinellas Cty.,* 773 F.2d 1182, 1188–89 (11th Cir.

1985) (quoting *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421

(1978)). To determine whether an action is frivolous, district courts must consider "whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." *Id.* at 1189 (quoting *Jones v. Texas Tech Univ.*, 656 F.2d 1137, 1145 (5th Cir. 1981)).

The Eleventh Circuit has identified factors to consider when assessing whether a case is frivolous, including "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." *Id.* In applying these factors, courts have found "frivolity" in cases where "the plaintiffs did not introduce any evidence to support their claims." *Id.* (citing cases where there was a finding of frivolity and where there was not). But "the plaintiff's section 1983 claims should not be considered groundless or without foundation for the purpose of an award of fees in favor of the defendants when the claims are meritorious enough to receive careful attention and review." *Busby v. City of Orlando*, 931 F.2d 764, 787 (11th Cir. 1991) (citing *O'Neal v. DeKalb Cty., Ga.*, 850 F.2d 653, 658 (11th Cir. 1988)); *Jones*, 656 F.2d at 1147 (rejecting a frivolity finding

where the "case, although not ultimately successful, had some arguable merit").

In determining whether a party is entitled to attorneys' fees based on a frivolity finding, courts should "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421–22. Additionally, "[e]ven when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Id.* at 422. Therefore, "[d]eterminations regarding frivoloity are to be made on a case-by-case basis." *Sullivan*, 773 F.2d at 1189.

Here, although Dr. Paylan's claims were ultimately unsuccessful, the Court does not find that they were so lacking in arguable merit as to be groundless or without foundation based on the standard outlined in *Christiansburg* and other precedent.

Rather, the Court finds that Dr. Paylan presented sufficient factual allegations to state multiple § 1983 claims and Florida state-law claims, which survived multiple motions to dismiss. Further, all of these factual allegations—and particularly those regarding the lawfulness of the

Marchman Act that was the center of this case—required this Court to conduct a thorough and detailed examination of the extensive evidence provided in support of and in opposition to such claims (namely, deposition testimony, treatment and evaluation records, and the statutory criteria for a Marchman Act) to determine whether Dr. Teitelbaum actually violated any of Dr. Paylan's constitutional rights. *See* ECF No. 181 (report and recommendation addressing the motions for summary judgment).

The Court, therefore, finds that Dr. Teitelbaum has failed to show that Dr. Paylan's claims were completely groundless or without foundation in addition to being unsuccessful. Instead, the Court finds that although Plaintiff's claims were thin, Plaintiff's claims were at least sufficiently meritorious to receive the careful attention and review of this Court. *See Busby*, 931 F.2d at 787 ("Our circuit has held that the plaintiff's section 1983 claims should not be considered groundless or without foundation for the purpose of an award of fees in favor of the defendants when the claims are meritorious enough to receive attention and review."). Because Plaintiff's claims were not frivolous, groundless, meritless, or without foundation as defined in *Christiansburg*, the Court concludes that Defendant is not entitled to an award of attorneys' fees in this case.

## C. Dr. Teitelbaum is not entitled to any other sanctions.

Dr. Teitelbaum also argues that this Court should sanction Dr. Paylan for exhibiting bad faith in pursuing her claims. He says that "Plaintiff pursued this action in bad faith for the illegitimate purpose of prejudicing Dr. Teitelbaum and not in furtherance of justice and in doing so misused the resources of this Court." In support of this assertion, Dr. Teitelbaum says that Dr. Paylan sent an email to him in which she threatened him and his career, which supposedly shows that "she lacks respect for the judicial process and views it not as a system for deciphering truth and administering justice but as her personal weapon to wield against those who oppose her." Further, he says that Plaintiff has been sanctioned by other courts for her "recurrent abuses in other lawsuits." ECF No. 192 at 5–8.

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn*, 5 L. Ed. 242 (1821). Included in this power is the power for courts to "assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (internal quotation marks omitted). "The imposition of sanctions in

23

this instance transcends a court's equitable power concerning relations

between the parties and reaches a court's inherent power to police itself,

thus serving the dual purpose of 'vindicat[ing] judicial authority . . . and

mak[ing] the prevailing party whole for expenses caused by his opponent's

obstinacy.'" *Id.* at 46.

> But
>
> [a] court must, of course, exercise caution in invoking its
> inherent power, and it must comply with the mandates of due
> process, both in determining that the requisite bad faith exists
> and in assessing fees. Furthermore, when there is bad-faith
> conduct in the course of litigation that could be adequately
> sanctioned under the Rules, the court ordinarily should rely on
> the Rules, rather than the inherent power. But if in the informed
> discretion of the court, neither the statute nor the Rules are up
> to the task, the court may safely rely on its inherent power.

*Id.* at 50.

"The key to unlocking a court's inherent power is a finding of bad

faith." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218,

1223 (11th Cir. 2017); *see also Amlong & Amlong, P.A. v. Denny's, Inc.*,

500 F.3d 1230, 1252 (11th Cir. 2007) ("[T]he threshold of bad faith conduct

for purposes of sanctions under the court's inherent powers is at least as

high as the threshold of bad faith conduct for sanctions under § 1927."). "An

action is brought in bad faith when the claim is entirely without color and

has been asserted wantonly, for the purposes of harassment or delay, or for

other improper purposes." *Hashemi v. Campaigner Publ'n, Inc.*, 784 F.2d 1581, 1584 (11th Cir. 1986) (quoting *Tedeschi v. Smith Barney, Hariss Upham & Co., Inc.*, 579 F. Supp. 657, 661 (S.D. N.Y. 1984)). Further, "[b]ad faith is an objective standard that is satisfied when an attorney knowingly or recklessly pursues a frivolous claim." *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010).

Here, Dr. Teitelbaum has failed to show that Dr. Paylan actually acted in bad faith in pursuing her claims against him. Although Dr. Paylan's claims lacked the evidentiary support to withstand Dr. Teitelbaum's motion for summary judgment, nothing before the Court reveals that Dr. Paylan knew or should have known her claims were unsupported or that she brought her claims to prejudice Dr. Teitelbaum. Moreover, the fact that Dr. Paylan sent a "threatening" email to Dr. Teitelbaum years before initiating this case and that Dr. Paylan was sanctioned for her conduct in *other* cases fails to prove that she acted with bad faith in litigating *this* case.

A federal court's inherent powers to sanction parties "must be exercised with restraint and discretion" and applied only in narrow circumstances. *Chambers,* 501 U.S. at  at 44. Because Dr. Teitelbaum has

25

failed to show that Dr. Paylan acted with bad faith in this case, this Court

declines to exercise those inherent powers here.[12]

## III. RECOMMENDATION

Accordingly, it is respectfully **RECOMMENDED** that:

1. Dr. Teitelbaum's Memorandum in Support of His Bill of Costs and Motion for Court to Determine Entitlement to Attorneys' Fees or Other Sanctions, ECF No. 192, should be **GRANTED in part** and **DENIED in part** as discussed above. Defendant is entitled to a reduced amount of taxable costs, but Defendant is not entitled to attorneys' fees or other sanctions.

2. The Clerk must reduce the taxable costs by **$9,166.12** and enter a judgment for costs in favor of Defendant and against Plaintiff in the total sum of **$9,937.83.**

**IN CHAMBERS** this 1st day of August 2018.


*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

---

[12] In Dr. Paylan's response, she argues that the Court should impose sanctions against Dr. Teitelbaum because his motion is frivolous, unreasonable, and without foundation. She says that many of Dr. Teitelbaum's requested costs are not taxable under § 1920 and that the rest of his motion "is frivolous by the use of blanket statements which are simply nothing but 'buzz' words without any reference to the record or the evidence in this case." Therefore, Dr. Paylan contends that "[t]his Court should exercise its inherent authority and sanction Defendant and his Counsel for the filing of what is wholly a lacking in merit pleading."  ECF No. 199 at 15–16.

But while this Court does find Dr. Teitelbaum's motion to be lacking in the necessary support to show his entitlement to all of his requested costs, attorneys' fees, or any other sanction, the Court does not find that Dr. Teitelbaum exhibited any bad faith in the filing of his motion. Thus, the Court declines to sanction Dr. Teitelbaum.

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**

27